**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM JOSEPH PHILLIPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 05-0131-WS-M** |
| | ) | |
| **OFFICER B.E. IRVIN, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on defendants' Motion for Summary Judgment (doc. 21) and defendants' Motion to Strike Plaintiff's Exhibits (doc. 45). The Motions have been briefed and are now ripe for disposition.[1]

## I. Overview of the Case.

On the morning of March 4, 2003, plaintiff William Joseph Phillips ("Phillips") was involved in a fracas with Officer B.E. Irvin ("Trooper Irvin"), an on-duty Alabama State Trooper, on the premises of Phillips Truck Stop, a full-service truck stop owned or co-owned by Phillips and located on Highway 43 in Axis, Alabama. During the course of these events, Phillips was arrested on a misdemeanor charge of obstructing governmental operations, in violation of Ala. Code § 13A-10-2.[2] Pursuant to that arrest, Trooper Irvin handcuffed Phillips, placed him in his patrol vehicle, and transported him to jail, where he was released on a signature bond. The charges against Phillips were ultimately dismissed; however, Phillips

---

[1] Also pending is plaintiff's Motion for Oral Argument (doc. 41). After careful review of the parties' detailed written submissions (including plaintiff's 65-page, two-pronged submission in opposition to summary judgment), the undersigned is of the opinion that oral argument would not materially assist the Court in understanding and resolving the issues presented. Accordingly, the Motion for Oral Argument is **denied**. *See* Local Rule 7.3 ("the court may in its discretion rule on any motion without oral argument").

[2] This section provides that a person commits a misdemeanor if he (a) intentionally obstructs, impairs or hinders administration of law or other governmental function; and (b) does so by means of intimidation, physical force, interference, or the like.

allegedly sustained serious physical injuries, including "bilateral injury to the nerves in his wrists," "cervical disc herniations and aggravation of pre-existing lumbar disc problems," "vision problems," and "severe physical pain and mental anguish," as a result of his altercation with Trooper Irvin. (Complaint, ¶ 14.)

On March 3, 2005, Phillips filed a Complaint (doc. 1) in this District Court against Trooper Irvin, individually and in his official capacity as an Alabama State Trooper, and Colonel W.M. Coppage ("Col. Coppage"), individually and in his official capacity as Director of the Alabama Department of Public Safety. Phillips asserts no fewer than eleven enumerated causes of action against defendants, including federal claims under 42 U.S.C. § 1983 for use of excessive force, unlawful search and/or seizure, and violation of procedural and substantive due process rights. The Complaint also includes state-law claims for negligence, willfulness, wantonness, intentional infliction of emotional distress, malicious prosecution, false imprisonment, and assault and battery. The claims against Trooper Irvin are predicated on his conduct during the March 2003 incident, while those against Col. Coppage are based on a theory of failure to hire, train, supervise, direct and control his subordinates (*i.e.*, Trooper Irvin).

At the close of discovery, defendants filed a Motion for Summary Judgment, seeking entry of judgment in their favor as a matter of law on such grounds as Eleventh Amendment immunity, qualified immunity, state-agent immunity, and legally insufficient facts to sustain plaintiff's asserted causes of action. With leave of court, Phillips filed a 39-page brief[3] in

[3] This 39-page opposition brief (doc. 37) lacks any systematic discussion of the facts, which plaintiff instead presented in a separate 26-page Response to Defendants' Suggested Determinations of Undisputed Fact (doc. 38) that bears only slight overlap with the brief. The combined 65-page filing extends well beyond what the Court had contemplated in its Order granting plaintiff limited relief from Local Rule 7.1(b). Local Rule 7.2(a) was not intended to allow parties to evade page limitations imposed by LR 7.1(b) by diverting the fact section of their brief into a separate filing; rather, the purpose of the Suggested Determinations of Fact and Conclusions of Law requirement is to have a party restate the facts and law from its brief in a form that the Court could adopt as its ruling in that party's favor. Furthermore, plaintiff's submission appears excessive given that (a) plaintiff presents a 26-page narrative of a finite set of factual circumstances that transpired over the span of approximately 20 minutes; and (b) defendants' principal brief (doc. 22) numbered just 21 pages, with Suggested Determinations of Undisputed Fact and Conclusions of Law (doc. 24) that merely restated in a different format facts and legal arguments set forth in their brief, which is precisely the intention of LR 7.2(a). In

opposition to the Rule 56 Motion, and defendants submitted a short reply brief. During the briefing process, defendants also submitted their Objection to and Motion to Strike Plaintiff's Exhibits. Because any evaluation of the summary judgment motion necessarily hinges on the type and nature of facts in the record, and because the Motion to Strike calls into question which facts are properly before the Court, resolution of that Motion is the appropriate analytical starting point.

**II. Motion to Strike Plaintiff's Exhibits.**

In their Motion to Strike (doc. 45), defendants ask the Court to strike from the record two of plaintiff's exhibits, to-wit: Exhibit I to Exhibit 1, and Exhibit 18. The former item is a letter from Russell A. Hudgens, M.D. dated February 23, 2004 and outlining Dr. Hudgens' opinions concerning the nature and extent of plaintiff's permanent impairment. Defendants object to Exhibit I as hearsay that does not qualify as a medical record. This objection is not well taken. The law in this Circuit is unmistakably clear that "inadmissable hearsay may sometimes be considered by a court when ruling on a summary judgment motion," provided that such hearsay is reducible to admissible form at trial. *Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1135 (11th Cir. 1996); *see also McMillian v. Johnson*, 88 F.3d 1573, 1584-85 (11th Cir. 1996); *Hill v. Manning*, 236 F. Supp.2d 1292, 1297 (M.D. Ala. 2002) ("Upon a motion for summary judgment, the district court may consider a hearsay statement if the statement could be reduced to admissible form at trial.").[4] All indications are that Dr. Hudgens' statements in Exhibit I are readily reducible to admissible form at trial via live testimony; therefore, defendants' objection

---

its discretion, the Court will accept plaintiff's submissions in their current form; however, counsel does this Court and its client a disservice by burdening the Court with unnecessarily prolix filings and compelling it to sift through an undifferentiated mass of tangential facts and facially meritless arguments in search of the points at the core of plaintiff's opposition.

[4] Any argument by defendants that evidence must be presented in admissible form to be considered at the Rule 56 stage is contrary to binding precedent. *See Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001) ("In considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form.") (citation omitted); *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form.").

to Exhibit I on hearsay grounds is **overruled**.[5]

Defendants also seek to exclude Exhibit 18, a six-page document entitled "Summary of Relevant Medical Records" and listing neither date nor author. Defendants object under Rule 1006, Fed.R.Evid. This argument fails for two reasons. First, as with Exhibit I, the Court has every confidence that the information presented in Exhibit 18 may be packaged in admissible form at trial; therefore, it is properly considered at the Rule 56 stage. Second, Rule 1006 does not forbid summaries of voluminous writings, but expressly authorizes them provided that (a) those writings are so voluminous that they cannot conveniently be examined in court; and (b) the underlying records are reasonably available for examination and copying by opposing counsel. *See generally Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159-60 (11th Cir. 2004) (discussing Rule 1006); *United States v. Francis*, 131 F.3d 1452, 1457 (11th Cir. 1997) ("Rule 1006 allows the district court to admit the summaries as evidence" in its discretion where the requirements are satisfied). Defendants make no argument that the criteria of Rule 1006 cannot be satisfied with respect to this exhibit. Accordingly, defendants' objection to Exhibit 18 is likewise **overruled**.

As both of defendants' evidentiary objections are devoid of merit, the Motion to Strike Plaintiff's Exhibits (doc. 45) is **denied**.

## III. Factual Background.[6]

### *A. The Traffic Stop.*

Trooper Irvin has been employed by the Alabama Department of Public Safety as a

---

[5] Even if plaintiff were bound to present Dr. Hudgens' testimony in admissible form on summary judgment (which he is not), defendants' objection remains unfounded, inasmuch as plaintiff submitted an Affidavit of Russell A. Hudgens, M.D. (doc. 47, Exh. 4(a)) averring that Exhibit I is a true and correct copy of the February 23, 2004 letter reciting his medical opinions concerning plaintiff. Nonetheless, the Court finds that plaintiff was not required to take this additional step of securing an affidavit from Dr. Hudgens, and defendants' efforts to force them to do so were not supported by law.

[6] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004); *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor.

highway patrol trooper for some nine and a half years. (Irvin Dep., at 7.) On the morning of March 4, 2003, Trooper Irvin was assigned to patrol all of Mobile County. (*Id.* at 31.) During the relevant time period, Trooper Irvin's name tag was not showing and his badge number was not visible. (Jamison Aff., ¶ 12.) At approximately 10:23 a.m., Trooper Irvin observed a fully loaded log truck speeding on Highway 43 near the 15 mile marker and initiated a routine traffic stop.[7] With Trooper Irvin following, the driver of the log truck proceeded to the Phillips Truck Stop (the "Truck Stop"), turned into the parking area near the south entrance of the Truck Stop, and stopped his vehicle close to the south end of the Truck Stop property. Trooper Irvin did not direct or signal the truck driver where to park his vehicle. (Irvin Dep., at 54-55.) For his part, Trooper Irvin followed and parked his patrol car approximately 10-15 feet behind the log truck, such that his vehicle protruded into the vicinity of the south entrance of the Truck Stop. (*See* Phillips Aff., ¶ 6 & Exh. A.) Trooper Irvin did not direct the log truck driver to move his vehicle because he "didn't see anything wrong with where he was parked." (Irvin Dep., at 55.)[8]

Video filmed from the dash-mounted camera on Trooper Irvin's patrol car reflects that, from 10:23 a.m. to 11:07 a.m., Trooper Irvin proceeded with the traffic stop by conferring with the log truck driver, reviewing his paperwork, and visually inspecting the log truck itself for compliance with applicable DOT regulations and requirements. During the course of this stop, Trooper Irvin issued the trucker three citations for a vast array of infractions, including speeding,

---

[7] The traffic stop was recorded by means of a dash-mounted video camera and audio recording in Trooper Irvin's patrol vehicle. The camera operated without interruption for the entire period of the traffic stop. (Irvin Aff., ¶ 3.) The audio recording was generated from a body mike on Trooper Irvin's person, as well as microphones in the front and back seats of the patrol vehicle. (Irvin Dep., at 59.) An unexpurgated, duly authenticated copy of that recording has been furnished by the parties in DVD format, and is included in the summary judgment record. (Irvin Aff., ¶¶ 4-5; *see also* Defendants' Exh. 4; Plaintiff's Exh. 15.) The Court has viewed the DVD several times. Although the video portion of that recording is largely unilluminating (inasmuch as all interactions between Trooper Irvin and Phillips occurred off-camera), the audio portion captures their verbal communications. Also, the DVD bears a date-time stamp that facilitates the construction of a time line for the particular events of interest.

[8] Plaintiff represents that "[e]xactly where the log truck and Trooper Irvin stopped is a hotly disputed fact." (Doc. 38, at 4.) After careful review of the record, the Court is unable to identify any genuine dispute between the parties as to the specific locations at which Trooper Irvin and the log truck pulled over.

badly worn tires, expired tag, missing DOT markings, no street horn, cracked windshield, failed windshield wipers and tail lights, no annual inspection, no proof of insurance, and a switched tag. (Defendants' Exh. 4.)

***B. The Confrontation.***

The traffic stop appeared utterly routine until 11:07 a.m., when Trooper Irvin was approached by Phillips, the co-owner of the Truck Stop. (Phillips Aff., ¶ 4.) Phillips, who was working at the Truck Stop that day, observed the position of the vehicles and became concerned that Trooper Irvin's vehicle might impede traffic into and out of the Truck Stop because it partially obstructed the south entrance, such that he feared customers might keep driving instead of navigating that entrance. (*Id.*, ¶¶ 4-8, 11.)[9] Phillips also was concerned about safety risks, given the partially obstructed status of the south entrance. (*Id.*, ¶ 9.)

When he saw Phillips approaching, Trooper Irvin stepped out of the patrol car and greeted him. (Irvin Dep., at 66.) The videotape reflects that Phillips asked if the Trooper would pull forward so that vehicles could access the Truck Stop, to which Trooper Irvin responded that he was on a truck inspection. The video shows that Phillips then repeated his request, and Trooper Irvin reiterated that he was on a government truck inspection and would be done shortly.

---

[9] That said, it is undisputed that Trooper Irvin's vehicle did not completely block the flow of traffic into and out of the Truck Stop during the traffic stop. Trooper Irvin observed several trucks enter and exit the Truck Stop through the south entrance during that time. (Irvin Dep., at 207-08.) Vehicles' ability to secure ingress and egress from the Truck Stop by means other than the south entrance is confirmed by the videotape, notwithstanding plaintiff's objection that such vehicles were trespassing on the property of an adjacent business south of the Truck Stop. Other troopers later called to the scene were able to enter the Truck Stop parking area via the south entrance. (Stevens Dep., at 48, 57.) One trooper said the arrangement was nothing more than an "inconvenience" to drivers trying to use the Truck Stop. (*Id.* at 59.) And Phillips acknowledges that, during the course of the traffic stop, vehicles did enter and/or exit from the Truck Stop by means of the south entrance, the north entrance, and by cutting across the property to the south. (Phillips Aff., ¶¶ 8, 10.) Thus, the uncontroverted evidence is that, while Trooper Irvin's vehicle might have partially impeded customers who wished to use the south entrance, it did not cut off the Truck Stop from all traffic during the traffic stop, and did not even shut down the south entrance, much less the north entrance or the thoroughfares on the adjacent business's property. There is no evidence, aside from Phillips' unvarnished speculation, that any prospective customer who wished to transact business at the Truck Stop declined or was prevented from doing so because of the location of Trooper Irvin's vehicle and the log truck.

Undeterred, Phillips stated that Trooper Irvin was affecting his business and repeatedly stated "you're blocking my drive." Trooper Irvin repeated that he would be finished shortly, stated that he was wasting time talking to Phillips, and denied blocking the Truck Stop's drive because numerous trucks had passed by him during the traffic stop and could go around the patrol car. The dispute escalated swiftly from that point, with neither party backing down and the tension ratcheting higher with each heated exchange. The following sequence of dialogue (which occurred immediately after Trooper Irvin's comment that vehicles could go around him) gleaned from the recording is instructive as to the nature and content of the parties' interaction:

Phillips: What's your name?

Irvin: Sir, you need to back off.

Phillips: What's your name?

Irvin: Sir, you need to back off.

Phillips: All I want to know is your name.

Irvin: Sir, you need to back off.

Phillips: You ain't going to give me your name or your badge, nothing or nothing like that?

Irvin: Sir, you need to back off. I haven't pulled you over.

Phillips: No, I'm just going to report it, report it in about what's going on.

Irvin: Sir, I'm on a federal, I'm on a federal traffic stop. You need to back off. I'm on a federal DOT inspection. You need to back off.

Phillips: Yes. You're blocking my drive. All I –

Irvin: Sir, you need to back off. Sir, you need to back off.

Phillips: (inaudible)

Irvin: Place your hands on my vehicle, sir. You're under arrest for interference with a government operation.

(Defendants' Exh. 4, at 11:07-11:09.)[10]

Because the camera was mounted on the dashboard and the parties were standing on the

[10] The above dialogue is gleaned from the Court's repeated viewing of the video. Neither party submitted a proposed transcript of the entire audio portion of the recording, much less a stipulated transcript. (At most, defendants offered a partial transcript of an excerpt of that recording.) Such exhibits would have greatly facilitated the Court's review.

driver's side of the patrol car, neither Trooper Irvin nor Phillips is visible on the videotape during this conversation. For that reason, the Court must rely on other aspects of the summary judgment record for evidence as to their body language and physical conduct. Taken in the light most favorable to Phillips, the evidence is that he initially walked to within arm's reach of Trooper Irvin, but stepped back when Trooper Irvin instructed him to back off. (Irvin Aff., ¶ 12.) Thus, Phillips was standing near the back edge of the rear door on the driver's side of the patrol car, while Trooper Irvin stood by the driver's door. (*Id.*) Phillips' evidence is that he never moved closer to Trooper Irvin, that he did not touch him in any way, that he never advanced on him, and that he never attempted to strike him. (*Id.*, ¶¶ 12-14.)[11] Phillips also maintains that he "was not speaking to the trooper in a hostile or angry manner." (*Id.*, ¶ 13.) This self-serving characterization of the evidence directly conflicts with the audio portion of the recording which Phillips has submitted. That recording establishes that Phillips' tone in verbal interaction with Trooper Irvin became argumentative and irate as both parties escalated the argument and stubbornly held their ground. The deferential standard of review on summary judgment stops short of requiring the Court to pick and choose between conflicting pieces of evidence submitted by a nonmovant. *See, e.g., Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (*en banc*) (rejecting notion that court has duty to favor bits of evidence incompatible with other portions of nonmovant's evidence and to string together those items to form story deemed most helpful to nonmovant).[12]

---

[11] The Court recognizes that defendants' evidence is to the contrary. Trooper Irvin testified that Phillips poked him in his chest, that Phillips remained far closer than six feet, that he felt threatened by Phillips' conduct, that Phillips advanced on him, that Phillips refused to back off, and that Trooper Irvin's back was pressed against the car such that he had no escape route. (Irvin Dep., at 68-69, 91-92, 162.) For summary judgment purposes, however, this evidence will not be considered; rather, the Court will credit the evidence of the incident in the light most favorable to Phillips.

[12] The same principles greatly diminish Phillips' characterization of his speech as "calm" and "polite." (Phillips Aff., ¶¶ 12, 14.) While Phillips' first statements to the Trooper might have fit that description, the recording clearly shows that Phillips' tone became combative, that he raised his voice, and that he repeatedly cut off or talked over Trooper Irvin as the discussion continued. Likewise, the Court cannot accept Phillips' self-serving theory that the precipitating event for his arrest was his request for Trooper Irvin's name and badge number.

***C. The Arrest.***

As noted *supra*, after instructing Phillips on eight occasions to "back off" and after Phillips continued to argue with him, Trooper Irvin advised Phillips that he was being arrested for interference with government operations. According to Trooper Irvin, the basis for this arrest was that "[h]e was preventing [Trooper Irvin] from completing the traffic stop with the trucker" by "diverting [his] attention away from the violator." (Irvin Dep., at 161-62.) Trooper Irvin testified that "every time [he] told him to 'back off,' he wouldn't." (*Id.* at 162.) Simply put, "[h]e was being placed under arrest for interfering with [the] traffic stop." (*Id.* at 162-63.)

The video reflects that immediately after Trooper Irvin told Phillips that he was under arrest, he instructed him a loud voice to "be still." (Defendants' Exh. 4.) It appears that there was a brief scuffle between Phillips and Trooper Irvin at this time. The evidence most favorable to Phillips is that Trooper Irvin "came down extremely fast and hard with the handcuffs," striking Phillips' left hand midway between wrist and knuckles, causing two red marks on his hand. (Phillips Aff., ¶ 16 & Exh. B, C.)[13] When Phillips instinctively jerked his hand back in

---

(*Id.*, ¶ 14.) The recording strongly suggests that the precipitating fact for Phillips' arrest was the entire sequence of events between them, and the Court will not credit Phillips' speculative guess that one part or another of that conversation was the sole catalyst behind Trooper Irvin's decision to arrest him.

[13] Defendants urge the Court to disregard this testimony pursuant to the sham affidavit rule. (Reply Brief (doc. 46), at 3.) "Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003). Defendants maintain that these principles apply here because Phillips "did not mention this incident" in his deposition when asked how he was hurt. (Reply Brief, at 3.) The Court rejects this argument for two reasons. First, there is no direct contradiction between the affidavit and deposition. After all, Phillips' deposition testimony was that Trooper Irvin "handcuffed [him] real severe." (Phillips Dep., at 21.) It does not appear that defense counsel asked Phillips to elaborate. Certainly, the act of striking one's left hand hard and fast with handcuffs is a reasonable elaboration and clarification of a statement that one was "handcuffed real severe." There being no inconsistency, the "sham affidavit" rule is inapplicable. *See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir. 1984) (explaining that a nonmovant may create a genuine issue of material fact by submitting affidavit clarifying testimony given in his deposition); *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002) (observing that a nonmovant "may attempt to clarify or augment (but not contradict) prior deposition testimony through affidavits"); *Messick v. Horizon*

response to the blow, Trooper Irvin forcibly grasped his left hand, swung him around, and shoved his body against the side of the car, before grasping Phillips' right arm and applying handcuffs to his hands behind his back. (Phillips Aff., ¶ 16; Irvin Dep., at 90.)[14] Trooper Irvin applied the cuffs "extremely tight," such that "they immediately caused severe pain to [his] wrists." (*Id.*) Trooper Irvin checked the cuffs and satisfied himself that they were not too tight before placing Phillips in the patrol car. (Irvin Dep., at 88, 135, 187, 198.)[15] A bystander

---

*Indus., Inc*., 62 F.3d 1227, 1231 (9th Cir. 1995) (stating that, even under the "sham affidavit" doctrine, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony"); *Stewart v. Board of Comm'rs of Shawnee County, Kansas*, 216 F. Supp.2d 1265, 1270 (D. Kan. 2002) (considering information in affidavits that served to clarify, explain or correct prior misstatements, as affidavits were not a "sham" with respect to such information). Second, this specific injury and the circumstances that caused it were recounted at length in the Complaint; therefore, defendants cannot credibly assert that they were surprised or prejudiced by its inclusion at this time. (*See* Complaint, ¶ 9 (alleging that Trooper Irvin struck the top of plaintiff's hand in a blow that caused intense pain).)

[14] Trooper Irvin's description of these events was that Phillips resisted arrest by pulling away from him once Trooper Irvin attempted to place him in custody. (Irvin Dep., at 162.) Again, this testimony will not be credited for Rule 56 purposes.

[15] Phillips avers that Trooper Irvin "did not check to see how tight the cuffs were." (*Id.*, ¶ 16.) This statement is sheer conjecture, obvious overreaching and plainly devoid of personal knowledge. If Phillips' hands were cuffed behind his back and if Trooper Irvin were standing behind him, he could not possibly have seen whether Trooper Irvin did or did not visually inspect the cuffs. This contention will be disregarded pursuant to Rule 56(e), Fed.R.Civ.P., which requires that summary judgment affidavits be "made on personal knowledge." Because Phillips could not possibly know whether Officer Irvin did or did not check his cuffs while Phillips' back was turned, this statement will not be considered. More reasonable and candid is Phillips' statement that he "did not see or feel him do anything to check to see how tight the cuffs were." (Phillips Aff., ¶ 16.) However, that statement does not negate Trooper Irvin's unambiguous testimony that he checked the handcuffs before placing Phillips in the car and determined that they were not too tight. (Irvin Dep., at 88, 135, 187, 198.) Just because Phillips did not see or feel him check the cuffs does not imply that Trooper Irvin did not do so. Thus, even considering the evidence most favorably to Phillips, the Court will credit Trooper Irvin's uncontroverted testimony that he checked the tightness of the cuffs before placing Phillips in his patrol vehicle. Likewise, the Court will disregard Phillips' rank speculation that Trooper Irvin "knew how tight they were because he put them on extremely tight to hurt or punish me for disputing him and saying I was going to report him." (Phillips Aff., ¶ 16.) Such blatant conjecture about what someone else knew or what motivated someone else's behavior has no place in a summary judgment affidavit.

observed that Trooper Irvin "was very rough in putting the handcuffs on" Phillips, even though Phillips was not resisting in any way. (Jackson Aff., ¶¶ 4-5.)

Construed in the light most favorable to Phillips, the record shows that after cuffing him, Trooper Irvin "violently jerked [Phillips] up by the chain on the cuffs, raising [his] arms high behind [him] and causing pain" and injury. (Phillips Aff., ¶ 17.)[16] Trooper Irvin did so, despite the fact that Phillips was not resisting or fighting back in any way, but was instead being fully compliant. (*Id.*)[17] Trooper Irvin admits that "[o]nce he was handcuffed, he was in full compliance." (Irvin Dep., at 198.) After Trooper Irvin handcuffed Phillips, he "was no longer having to restrain him." (*Id.* at 158.) According to Phillips, however, Trooper Irvin did not stop using force against him. Instead, Trooper Irvin pulled him around the patrol car, "bumping" him into the back of the car as he did so, to the rear passenger door. (Phillips Aff., ¶ 18.)[18] Phillips avers that Trooper Irvin shoved his head into the side of the car at the top of the back door's opening, causing Phillips' head to strike the car, his hat to fall off, and his body to fall into the

---

[16] Again, Phillips' statement in his affidavit that Trooper Irvin engaged in this maneuver "for the purpose of inflicting pain because he was angry that [Phillips] had questioned his judgment and was going to report him" (Phillips Aff., ¶ 17) is clearly speculative, not based on personal knowledge, and well outside the parameters of a permissible affidavit under Rule 56(e). This improper statement will be disregarded.

[17] Trooper Irvin denies having pulled up on the cuffs after placing them on Phillips' wrists. (Irvin Dep., at 135.) According to Trooper Irvin, Phillips is "definitely" mistaken in testifying that he was jerked up by the handcuffs, because Trooper Irvin "never pull[s] somebody by the handcuffs. That's something we're taught not to do." (*Id.* at 158.)

[18] Several of plaintiff's corroborating witness affidavits include allegations that Trooper Irvin slammed Phillips, face down, onto the back of the patrol vehicle. Indeed, witness Robert Jamison states that Trooper Irvin threw Phillips "across the back of the car, face down" (Jamison Aff., ¶ 4), while witness Champion Jackson claims that Officer Irvin threw Phillips "face down on the back of the car." (Jackson Aff., ¶ 5.) Such statements are incompatible with Phillips' sworn statement that Trooper Irvin merely "bumped [him] into the back of the car" (Phillips Aff., ¶ 18.), and therefore will not be credited for Rule 56 purposes. After all, "we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant." *Evans*, 407 F.3d at 1278.

seat. (*Id.*; Phillips Dep., at 21.)[19] Just after Trooper Irvin told Phillips to "have a seat" at 11:09 a.m., the dash video camera wobbled momentarily (as if the car had just been shaken in some way), and the audio picked up Trooper Irvin saying "uh-oh." (Defendants' Exh. 4.) There is no discussion on the recording between Phillips and Trooper Irvin about the blow or any pain or injury to his head, and the video portion of the recording does not confirm whether Phillips did or did not hit his head.

The recording shows that, between 11:09 a.m. and 11:15 a.m., Phillips made as many as five requests for help from Trooper Irvin. Within 20 seconds after being placed in the car, Phillips stated in a loud voice, "Hey, these things is too tight. They're hurting me." At 11:10 and 11:11 a.m., he repeatedly yelled "hey" and said "excuse me," apparently in an effort to get the attention of Trooper Irvin or his colleagues. At 11:11, he stated loudly, "These things are cutting my circulation off." At 11:13, Phillips stated, "Hey. Can you loosen these things? They're hurting me." One minute later, he yelped, "Help, help. I'm hurt." He repeated the statement that he was hurt 30 seconds later. Despite these repeated pleas for assistance over a six minute period, Trooper Irvin never acknowledged or responded to them, or otherwise checked Phillips' physical condition. (*See* Defendants' Exh. 4; Phillips Aff., ¶ 21.) During this time, Phillips was in "terrible pain" because of the tightness of the cuffs. (Phillips Aff., ¶ 20.) Trooper Irvin testified that Phillips asked him to loosen the handcuffs immediately upon being placed in the patrol vehicle, but that Trooper Irvin took no action because he had previously checked the cuffs for tightness. (Irvin Dep., at 88.)[20] As for Phillips' later cries for help,

---

[19] Trooper Irvin expressly denies that Phillips hit his head as he was being placed inside the patrol vehicle. (Irvin Dep., at 78, 135, 158.) In fact, Trooper Irvin's testimony is that he backed Phillips into the car, such that it would have been impossible for the front of his head to strike the vehicle. (*Id.* at 207.)

[20] According to Trooper Irvin, when Phillips first complained that the cuffs were too tight, Trooper Irvin advised him to sit sideways so that he was not sitting directly on the handcuffs. (Irvin Dep., at 198.) But no such comment is captured by the audio portion of the recording, even though there were two microphones in the patrol car (three, counting Trooper Irvin's body mike) and even though Phillips' complaints of discomfort were clearly captured on the recording. This evidence, combined with Phillips' representation that Trooper Irvin "ignored [his] repeated pleas" (Phillips Aff., ¶ 21), raises an inference that Trooper Irvin never responded to Phillips' requests for help and complaints of pain, either by checking the cuffs or by advising

Trooper Irvin testified that he did not hear those requests because he was not in the vehicle. (Irvin Dep., at 97.) But Trooper Irvin did not re-engage the driver of the truck until 11:17 a.m., several minutes after Phillips' complaints of pain had subsided. (Defendants' Exh. 4.) In any event, several bystanders in the area of the Truck Stop overheard Phillips' repeated requests that the handcuffs be loosened because they were hurting him. (Jackson Aff., ¶ 6; White Aff., ¶ 5; Weaver Aff., ¶ 5.) If bystanders further away from Phillips than Trooper Irvin could hear Phillips' pleas for assistance and cries of pain, then a reasonable inference is that Trooper Irvin could too. Yet during the time Phillips was sitting in the car, Trooper Irvin never checked the tightness of the cuffs, much less adjusted or loosened them. (Phillips Aff., ¶ 21.)[21]

By approximately 11:15 a.m., other troopers were on the scene. The recording reflects a conversation between Phillips and an unidentified trooper or troopers at 11:24 or 11:25 regarding the handcuffs, at which time they were loosened, but not removed. (*See* Defendants' Exh. 4; Phillips Aff., ¶ 23.) By 11:26 a.m., Phillips asked whether the cuffs could be removed altogether. An unidentified trooper responded, "we loosened 'em up" at 11:27. (Defendants' Exh. 4.) At 11:29 a.m., the handcuffs were apparently adjusted or removed. (*Id.*) Several minutes later, Trooper Irvin transported Phillips from the scene. Trooper Irvin's supervisor ordered that Phillips not be transported to Mobile Metro Jail, but that he instead be taken to the Creola Police Department, so as to expedite Trooper Irvin's return to his patrols. (Irvin Dep., at 109, 163.) At approximately 12:00 p.m., Phillips was released on a signature bond. (Plaintiff's Exh. 3.) The charges against Phillips were dismissed or *nolle prossed* when Trooper Irvin failed to appear at a scheduled court hearing. (Phillips Aff., ¶ 27.)

Defendant Col. Coppage was not a direct participant in any of the events of March 4, 2003. When asked what Col. Coppage had done to harm him, Phillips' response was, "He didn't

---

Phillips to sit differently.

[21] Again, the Court recognizes that Trooper Irvin's testimony is to the contrary, as he testified that he took Phillips out of the car and rechecked the cuffs at one point, that he instructed Phillips to relax his arms to relieve the pressure, and that he switched the cuffs from being behind Phillips' body to being in front of him after Trooper Irvin's supervisor showed up. (Irvin Dep., at 89, 135, 136, 163.) This evidence is disputed, and is therefore not credited on summary judgment.

do nothing." (Phillips Dep., at 78.)

***D. The Aftermath.***

Upon Phillips' release from Creola Jail, an acquaintance observed that his face and wrists were bruised and that these were new injuries. (Jackson Aff., ¶ 8.) At 1:51 p.m. on March 4, 2003, Phillips presented at Springhill Memorial Hospital's Emergency Room, complaining of pain in both wrists. The physician's report from that visit indicated that Phillips stated that the officer had clamped the cuffs on too tightly, that he had hit his head, that he had twisted his shoulder, and that his hands were tingling. (Defendants' Exh. 3, at 0153, 0155.) The emergency room doctor found no obvious fracture or dislocation, and applied splints to both wrists. (*Id.*) That physician also noted that Phillips' wrists were tender and swollen, that his range of motion was limited by pain, and that the skin was abraded and bruised. (*Id.*)[22] On March 5, 2003, Phillips contacted Internal Medical Center complaining of dizziness and vomiting. (Plaintiff's Exh. 16.) He was seen the following day, at which time he complained of tingling to his hands, swelling to his wrists, and a blow to the head. (*Id.*) The physician's notes from that visit found mild abrasions to his wrists and zero trauma evident to his head, indicated that Phillips was squinting episodically with his left eye, and observed that "pain + symptoms appear out of proportion to physical findings." (*Id.*) Phillips testified that his eyeballs were bruised from having his head slammed into Trooper Irvin's car, and that for three days his eyes were swollen. (Phillips Dep., at 24.)

In the ensuing months, Phillips saw a variety of additional physicians. By and large, the details of those visits (which are set forth in the parties' summary judgment submissions, along with substantial medical records) are not relevant to the pending Motion for Summary Judgment. It suffices to note that Phillips' treating orthopedic specialist, Russell A. Hudgens, M.D., opined via letter dated February 23, 2004 that the ultimate effect of the Trooper Irvin incident was that Phillips "suffers from contusions of the nerves within his wrists bilaterally, as well as a cervical strain with two small central herniations of the C4-C5 and C5 discs, as well as aggravation of a

---

[22] Defendants repeatedly characterize this evidence as showing that "[t]here was no head or face tenderness." (Defendants' Brief, at 9; Reply Brief, at 5.) This statement is incorrect, as the physician's report specifically documents "tenderness of the left-sided occipital scalp." (Plaintiff's Exh. 19.)

pre-existing lumbar disc disease." (Phillips Aff., at Exh. I.) Dr. Hudgens further opined that these impairments "equate to a total of 19% of the body as a whole potential impairment as a result of the injury from March 4, 2003." (*Id.*) Phillips maintains that he continues to feel the effects of the incident to this day, including discomfort and loss of feeling in his wrists, pain with sitting and walking, and numbness in his leg. (Phillips Aff., ¶ 21.)

**IV. Summary Judgment Standard.**

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004).

**V. Analysis.**

Defendants' Motion for Summary Judgment proffers a host of legal grounds on which they claim to be entitled to entry of judgment as a matter of law. In brief, their Rule 56 arguments may be catalogued as follows: (a) Eleventh Amendment immunity precludes all claims against both defendants in their official capacities; (b) qualified immunity defeats plaintiff's § 1983 claims for wrongful arrest and excessive force against defendant Irvin in his individual capacity; (c) there are no facts to support either a § 1983 claim or a state law claim

against Col. Coppage for failure to hire, train, supervise, direct and control subordinates; (d) state-agent immunity precludes plaintiff's state law individual-capacity claims; and (e) the facts are legally insufficient to sustain a cause of action for outrage. In their reply brief, defendants augment these arguments by responding to plaintiff's claims in his opposition brief concerning causes of action for First Amendment retaliation and substantive due process. Each of these bases for relief will be addressed in turn.

***A. Official-Capacity Claims and Eleventh Amendment Immunity.***

Defendants' first asserted ground for summary judgment is that Eleventh Amendment immunity precludes all of plaintiff's claims, federal and state, against both defendants in their official capacities, as a matter of law. Plaintiff's 65-page, two-part submission in opposition to summary judgment never addresses this ground for Rule 56 relief, and offers no basis for concluding that Eleventh Amendment immunity is not fatal to his official-capacity claims. Nonetheless, the Court recognizes that it "cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004). This rule does not allow a district court to enter summary judgment in a defendant's favor as to any claim presented in the complaint merely because the plaintiff has not opposed a motion for summary judgment as to that claim. That said, the Court's review when the plaintiff does not respond to a motion for summary judgment is less searching than when he does respond. "The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion ...." *Id.* (citation omitted).[23] Should this review reveal the defendants' entitlement to

---

[23] This principle is in harmony with the well-established rule that "the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her." *Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990); *see also Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment"); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228,

summary judgment as to the official-capacity claims, the Court will not undertake to develop and weigh arguments that Phillips could have, but has not, asserted in opposition.

"Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 87 L.Ed.2d 114, 105 S.Ct. 3099 (1985) (quoting *Monell v. New York Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166. Thus, in suing Trooper Irvin (a highway patrol officer of the Alabama Department of Public Safety) and Col. Coppage (Director of the Alabama Department of Public Safety) in their official capacities, Phillips effectively sues the Alabama Department of Public Safety (the "Department") itself. The Department is clearly a department of the State of Alabama. *See* Ala. Code § 32-2-1. Thus, Eleventh Amendment considerations come into play with respect to any suit against the Department. *See Hughes v. Alabama Dep't of Public Safety*, 994 F. Supp. 1395, 1409 (M.D. Ala. 1998) (finding that Eleventh Amendment bars state law claims against Department of Public Safety for state constitutional violations).

"The Eleventh Amendment protects a State from being sued in federal court without the State's consent." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (*en banc*). "Under most circumstances, the Eleventh Amendment bars suits against states and state entities by their citizens." *Williams v. Board of Regents of University System of Georgia*, 441 F.3d 1287, 1303 (11th Cir. 2006). That said, of course, "even in those situations in which the Eleventh Amendment bars suits, a party may sue the state if the state has waived its immunity or if Congress has validly abrogated the state's immunity." *Id.* The Court perceives no viable basis for applying either exception to Eleventh Amendment immunity here. *See generally Robinson v. Georgia Dept. of Transp.*, 966 F.2d 637, 640 (11th Cir. 1992) ("Congress, in passing § 1983, did not intend to override the immunity guaranteed to the states by the Eleventh Amendment"); *Boshell v. Walker County Sheriff*, 598 So.2d 843, 844 n.2 (Ala. 1992) (explaining that any claim

---

1236 (M.D. Ala. 2000) ("[i]t is not for the court to manufacture arguments on Plaintiff's behalf" in response to a summary judgment motion).

for damages under § 1983 against a sheriff in his official capacity is barred by Eleventh Amendment).

For these reasons, and in the absence of any argument or authority to the contrary proffered by plaintiff, plaintiff's claims against defendants in their official capacities are foreclosed by Eleventh Amendment immunity, as a matter of law. Those claims are therefore **dismissed with prejudice**.[24]

***B. Qualified Immunity Defense to Section 1983 Claims Against Trooper Irvin.***

Defendant Trooper Irvin maintains that plaintiff's federal claims against him in his individual capacity are precluded by the defense of qualified immunity.

*1. Legal Standard.*

When a government officer is sued in his individual capacity for money damages based on alleged civil rights violations, he may posit an affirmative defense of qualified immunity. *See Swint v. City of Wadley, Ala.*, 51 F.3d 988, 994 (11th Cir. 1995). The Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L. Ed.2d 396 (1982). As such, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted).

"[I]n order to receive qualified immunity, the public actor must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

---

[24] Of course, Eleventh Amendment immunity has no bearing on plaintiff's § 1983 or state law causes of action against defendants in their individual capacities. *See, e.g., Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995) (declaring that Eleventh Amendment does not prevent a § 1983 damages award against state officials in their individual capacities); *Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989) (pointing out that while Eleventh Amendment is an obstacle in § 1983 claims, it does not preclude damages award against state officials in their individual capacities).

*Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). In assessing whether an official was engaged in a discretionary function, courts consider whether his acts were of a type that fell within his job responsibilities. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Of critical importance to this inquiry is "whether the government employee was (a) pursuing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* This criterion is clearly satisfied here. The wrongs plaintiff ascribes to Trooper Irvin occurred during a routine traffic stop and the ensuing arrest and detention of Phillips, all while Trooper Irvin was uniformed and performing his assigned duties as a highway patrol trooper. Such law enforcement functions are clearly discretionary functions for qualified immunity purposes. *See, e.g., Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (sheriff's deputy who arrested plaintiff was engaged in discretionary function because making arrests fell within his official responsibilities); *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (law enforcement officer clearly acts within course and scope of discretionary authority by arresting plaintiff and transporting her to jail); *Burdeshaw v. Snell*, 365 F. Supp.2d 1194, 1198 (M.D. Ala. 2005) ("An on-duty police officer making an arrest is performing a discretionary function."). There can be no legitimate question that the "discretionary function" element of the qualified immunity test is satisfied here.

"Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." *Crosby*, 394 F.3d at 1332. To prevail, the plaintiff must demonstrate that a reasonable jury could find from record evidence that the defendant "violated a clearly established constitutional right" of which a "reasonable government official would have been aware." *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001); *see also Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005) (official performing discretionary function is ineligible for qualified immunity if evidence in light most favorable to plaintiff shows that official's conduct violated clearly established constitutional right). This inquiry is two-pronged, as a court must first ask whether, viewing the evidence in the light most favorable to the plaintiff, the official's conduct violated a constitutional right. *See Harris v. Coweta County, Ga.*, 433 F.3d 807, 811 (11th Cir. 2005). If not, then the analysis ends and qualified immunity applies. *Id.* But if the evidence could support

a finding of a constitutional violation, then the court must assess "whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Id.* An affirmative answer to this question precludes qualified immunity, while a negative answer clinches qualified immunity.

In determining whether a right is clearly established, the "relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1330 (11th Cir. 2006) (citation omitted). In that regard, "[a] constitutional right is clearly established if controlling precedent has recognized the right in a concrete and factually defined context." *Chesser*, 248 F.3d at 1122 (citation omitted); *see also Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1305 (11th Cir. 2005) ("A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent.").[25] "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bashir*, 445 F.3d at 1330; *see also Williams*, 441 F.3d at 1302. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Bashir*, 445 F.3d at 1330-31 (citation omitted).

Armed with this analytical framework, the Court will assess Trooper Irvin's qualified

---

[25] For purposes of its "clearly established" analysis, plaintiff cites decisions from the First, Third, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits, and states that "[t]he Court can consider these decisions when examining whether ... the law was clearly established." (Opposition Brief, at 22.) But the Eleventh Circuit has explained that "[w]hen case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." *Bashir*, 445 F.3d at 1331 n.9. *Bashir*, in turn, relied on the Eleventh Circuit's *en banc* ruling in *Marsh v. Butler County, Ala.*, 268 F.3d 1014 (11th Cir. 2001), wherein the Court reasoned: "Each jurisdiction has its own body of law, and splits between jurisdictions on matters of law are not uncommon. We do not expect public officials to sort out the law of every jurisdiction in the country." *Id.* at 1032-33 n.10; *see also Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997) (*en banc*) ("In this Circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."). Therefore, the Court rejects plaintiff's suggestion that the law of other circuits is germane to the "clearly established" inquiry.

immunity defense separately with respect to the Fourth Amendment wrongful arrest claim, the Fourth Amendment excessive force claim, and the procedural due process claim.

*2. Fourth Amendment Claim Predicated on Unlawful Arrest.*

The Complaint alleges that Trooper Irvin's actions constituted an unlawful seizure and detention of Phillips, in violation of the Fourth and Fourteenth Amendments. (Complaint, ¶ 7.) Indeed, plaintiff's Ninth Cause of Action is a § 1983 claim sounding in unlawful search and seizure, and alleging that Trooper Irvin wrongfully arrested Phillips. (*Id.*, ¶¶ 41-43.) Defendants maintain that qualified immunity precludes any liability for Trooper Irvin on a Fourth Amendment wrongful arrest theory.

Probable cause for an arrest exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Draper v. Reynolds*, 369 F.3d 1270, 1276 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003)). To be entitled to qualified immunity protection, however, "an officer need not have actual probable cause but only arguable probable cause." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) (citation omitted); *see also Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.").[26] Thus, the relevant inquiry for Rule 56 purposes is not whether probable cause for the arrest actually existed, but instead hinges on the lesser threshold of whether "an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Durruthy*, 351 F.3d at 1089; *see also Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) (arguable probable cause to support qualified immunity in wrongful arrest context exists if facts and circumstances are such that officer "reasonably could have believed that probable cause

[26] The justification for this reduced burden on law enforcement officers to be eligible for qualified immunity is that it would be unfair to strip officers of immunity and to subject them to liability for making reasonable, albeit mistaken, judgments as to the presence or absence of probable cause. *See Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.").

existed"); *Johnson v. Wright*, 423 F. Supp.2d 1242, 1256 n.31 (M.D. Ala. 2005) ("Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could--not necessarily would--have believed that probable cause was present.").

Trooper Irvin arrested Phillips for obstructing governmental operations, in violation of Ala. Code § 13A-10-2. Defendants maintain that Trooper Irvin had arguable probable cause for doing so, and that he therefore is entitled to qualified immunity on the wrongful arrest claim. Section 13A-10-2 provides that it is a misdemeanor (i) to intentionally obstruct, impair or hinder a governmental function, where (ii) such action is performed by means of intimidation, physical force or interference. "The offense of obstructing governmental operations defined by § 13A-10-2 is an offense against public administration designed to condemn the actual obstruction, hindrance, or impairment through the use of intimidation, physical force, or interference, or other unlawful act of the administration of the law or other governmental function." *Robinson v. State*, 484 So.2d 1197, 1199 (Ala.Crim.App. 1986).[27]

The Court finds that, under the facts and circumstances presented here, Trooper Irvin had arguable probable cause to believe that Phillips was intentionally obstructing governmental operations, in violation of § 13A-10-2. Trooper Irvin was an on-duty highway patrol trooper who had stopped a log truck for speeding, had inspected the vehicle, and was in the process of preparing paperwork incident to that stop. He was unquestionably performing a governmental function within the meaning of the statute. As he did so, Phillips approached him, interrupted his efforts to complete the traffic stop, asked him to move his patrol vehicle, became

---

[27] The crime of obstructing governmental operations is not committed if a suspect interferes with or obstructs unauthorized or otherwise unlawful conduct by law enforcement officers. *See McCray v. City of Dothan*, 169 F. Supp.2d 1260, 1280-82 (M.D. Ala. 2001) (finding that officers lacked arguable probable cause to arrest plaintiff under § 13A-10-2 where officers were not performing legitimate operations in compelling plaintiff to leave restaurant where he was eating with his children); *Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998) (holding that "no reasonable police officer would have believed that the officers had probable cause to arrest [the plaintiff] for obstruction of such unauthorized actions"); *Houston v. Tucker*, 137 F. Supp.2d 1326, 1337 (N.D. Ga. 2000) ( "[W]hen officers forcibly try to resolve disputes, while not engaged in the lawful discharge of their official duties, they lack probable cause to arrest for obstruction of their unauthorized actions."). That line of precedent is not relevant here, inasmuch as Trooper Irvin was clearly performing authorized governmental functions at the time of the alleged obstruction.

argumentative when he declined to do so, and disregarded no fewer than eight commands to "back off." The record construed in the light most favorable to Phillips shows that the product of his behavior was that Trooper Irvin was prevented from timely completing the traffic stop because Phillips persistently diverted his attention away from the trucker. Under these circumstances, an officer could reasonably have believed that probable cause was present to arrest Phillips for intentionally obstructing or hindering a governmental function (*i.e.*, the traffic stop) via means of interference.[28] The arguable probable cause threshold being satisfied, Trooper Irvin is entitled to summary judgment on the Ninth Cause of Action on qualified immunity grounds.[29]

---

[28] In *Draper*, 369 F.3d at 1270, an arrestee brought a Fourth Amendment claim against a law enforcement officer in Georgia after being arrested for obstruction of justice in connection with a traffic stop. The officer had instructed the plaintiff on several occasions to retrieve certain documents, but the plaintiff refused to comply, accused the officer of harassing him, and yelled at him. The Eleventh Circuit found actual probable cause for the plaintiff's arrest, inasmuch as "[b]y repeatedly refusing to comply with Reynolds's reasonable instructions, and by acting belligerently and confrontationally, Draper hindered Reynolds in completing the traffic stop," giving the officer reasonable grounds to believe that he had violated a Georgia statute prohibiting the knowing and willful hindrance of a law enforcement officer in the lawful discharge of his official duties. *Id.* at 1276-77. Although *Draper* arose under a Georgia statute, rather than an Alabama statute, the probable cause analysis employed by the *Draper* panel on those analogous facts reinforces the Court's assessment of the qualified immunity issue here.

[29] In so concluding, the Court considers and rejects plaintiff's three arguments to the contrary. First, Phillips insists that there could be no probable cause to arrest him under § 13A-10-2 because that statute expressly "does not apply to the obstruction, impairment or hindrance of the making of an arrest." § 13A-10-2(b). Even assuming that Trooper Irvin had engaged in a non-custodial arrest of the truck driver, that arrest was already complete by the time Phillips approached Trooper Irvin, who had concluded his inspection and was simply preparing paperwork in connection with same. It strains the statutory language beyond reason to suggest that Phillips interfered with "the making of an arrest" of the truck driver. Any such non-custodial arrest had already happened before Phillips arrived. Absent any authority (which plaintiff has not cited and which the Court has not found) construing § 13A-10-2(b) so expansively, a reasonable law enforcement officer could have concluded that subsection (b) was inapplicable, and that it in no way negated the arguable probable cause for arresting Phillips. Second, Phillips maintains that he lacked the *mens rea* to satisfy the intent requirement. In the light most favorable to Phillips, the record shows that he approached the scene of an obvious, ongoing traffic stop, accosted Trooper Irvin by asking him to move his vehicle, became increasingly belligerent and confrontational when Trooper Irvin declined to do so, and

Even if plaintiff were correct that Trooper Irvin lacked arguable probable cause to arrest Phillips under § 13A-10-2 because that statute exempts obstruction in the making of an arrest, that finding would not preclude a determination that Trooper Irvin was entitled to qualified immunity on the § 1983 wrongful arrest claim. According to defendants, the qualified immunity defense remains applicable because Trooper Irvin had arguable probable cause to arrest Phillips for resisting arrest, in violation of Ala. Code § 13A-10-41, even though he never told Phillips that he was resisting arrest, never mentioned § 13A-10-41 in his report, and never otherwise relied on that section as the reason for the arrest.[30]

Alabama's resisting arrest statute provides that it is a misdemeanor to "intentionally

---

disregarded numerous directives that he "back off" and let the Trooper do his job, instead pressing forward with accusations that the Trooper was blocking his drive. These uncontroverted facts yield an inference sufficient to satisfy the intent requirement. *See A.A.G. v. State*, 668 So.2d 122, 129 (Ala.Crim.App. 1995) (suspect's intent to interfere "may be shown by the words and actions of the accused any may be inferred from all of the surrounding circumstances"). Third, plaintiff relies on *Crouch v. Whatley*, 900 F. Supp. 1567 (M.D. Ala. 1995) and *Walker v. Briley*, 140 F. Supp.2d 1249 (N.D. Ala. 2001) for the proposition that summary judgment must be denied where there are genuine questions of material fact as to the existence of probable cause. But *Crouch* and *Walker* are distinguishable, because even considering the record in the light most favorable to plaintiff, arguable probable cause existed for Phillips' arrest.

[30] In that regard, defendants correctly assert, and plaintiff does not dispute, that the probable cause threshold may be satisfied if there was probable cause to arrest a suspect on any offense, even if it is not the offense (or even closely related to the offense) identified by the law enforcement officer at the time of the arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (rejecting notion that arrest is unlawful under Fourth Amendment if offense for which there is probable cause to arrest is not "closely related" to offense identified by arresting officer); *Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (for purposes of arguable probable cause inquiry, it is irrelevant whether officer cited correct offense for arrest because neither officer's subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest); *United States v. Lopez-Moreno*, 420 F.3d 420, 432 (5th Cir. 2005) (even if officer was mistaken that suspect was violating particular statute, probable cause for traffic stop still existed if it was objectively reasonable to believe that suspect was violating another statute); *Burdeshaw*, 365 F. Supp.2d at 1199 (observing that Fourth Amendment requires only that there be probable cause for officer to arrest plaintiff for one offense). Thus, Trooper Irvin's failure to mention "resisting arrest" or § 13A-10-41 in his discussion with Phillips or in his written report is in no way fatal to his ability to rely on § 13A-10-41 to show arguable probable cause.

prevent[] or attempt[] to prevent a peace officer from affecting a lawful arrest of himself or another person." Ala. Code § 13A-10-41. "To establish a prima facie case of resisting arrest ..., the State must prove that the accused intentionally prevented or attempted to prevent a peace officer from effecting a lawful arrest of himself or another person." *Sims v. State*, 733 So.2d 926, 929 (Ala.Crim.App. 1998). If plaintiff is correct that Trooper Irvin was making an arrest at the time of Phillips' approach, then Phillips' conduct would at least arguably satisfy the *prima facie* elements of a violation of § 13A-10-41, so as to confer upon Trooper Irvin arguable probable cause to arrest Phillips on that basis. In that scenario, Trooper Irvin was attempting to complete the arrest of the trucker when Phillips accosted him, persistently interrupted and interfered with him, refused to back down, and was noncompliant with repeated requests to "back off," all of which obstructed Trooper Irvin's efforts to effect the trucker's non-custodial arrest. Thus, even if plaintiff's § 13A-10-2(b) argument is accepted as barring application of the obstruction of governmental operations statute because the obstruction related to the making of an arrest, Trooper Irvin would have had arguable probable cause to arrest him for resisting the trucker's arrest, pursuant to § 13A-10-41, such that qualified immunity would remain appropriate.[31]

For all of the foregoing reasons, the undersigned is of the opinion that the record construed in the light most favorable to the plaintiff establishes that Trooper Irvin had arguable probable cause to arrest Phillips for obstructing governmental operations in violation of § 13A-10-2, and/or for resisting arrest, in violation of § 13A-10-41. Trooper Irvin is therefore entitled to qualified immunity on the Fourth Amendment unlawful arrest cause of action, and his motion

---

[31] In arguing against § 13A-10-41, Phillips asserts that this offense requires "a showing that the suspect became disorderly or unruly." (Opposition Brief, at 3.) This is not correct. The undersigned has scoured the text of § 13A-10-41 and its interpretive case law in vain for any such requirement of disorderly or unruly conduct as an element of the offense. *See Sims*, 733 So.2d at 930 (explaining that the simple act of lying to police could constitute resisting arrest within the meaning of § 13A-10-41); Commentary to § 13A-10-41 ("Note that it is not necessary that defendant used force or violence in obstructing the officer, only that he engaged in some conduct intending to prevent the officer from effecting a lawful arrest."). The cases cited by plaintiff in support of his argument that the statutory offense of resisting arrest requires proof of disorderliness and unruliness do not state such a proposition; accordingly, those citations (and plaintiff's incorrect representations of their holdings) are unavailing and unhelpful.

for summary judgment as to the Ninth Cause of Action is **granted**.[32]

*3. Fourth Amendment Claim Predicated on Excessive Force.*

Plaintiff's Eighth Cause of Action is a § 1983 claim alleging that Trooper Irvin violated Phillips' constitutional rights by using excessive force during his arrest and detention. Trooper Irvin has moved for summary judgment as to that cause of action on the grounds that he is entitled to qualified immunity and that the facts do not support a claim of excessive force.

It is well established that claims of excessive force relating to an arrest must be analyzed under the Fourth Amendment's "reasonableness" framework. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (excessive force claims are properly analyzed under Fourth Amendment when they involve arrest or investigative stop of free citizen); *Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (similar). The Fourth Amendment's right to freedom from unreasonable searches and seizures plainly encompasses a

---

[32] In reaching this conclusion, the Court is cognizant of plaintiff's stance that summary judgment is inappropriate because "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). (Plaintiff's Brief, at 2.) But individuals do not have the right to carry such opposition or challenges to the extreme of interfering with or obstructing law enforcement officers in the performance of their duties. The *City of Houston* Court itself explained that the Constitution would not forbid, for example, punishing "an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection" or an individual who "may physically obstruct the officer's investigation" by running alongside the officer shouting at him. 482 U.S. at 462 n.11. Likewise, in *Abrams v. Walker*, 307 F.3d 650 (7th Cir. 2002), the court explained that "it is possible for conduct that begins under the mantle of constitutional protection (*e.g.*, questioning an officer) to end outside of such protection (*e.g.*, obstructing an officer)." *Id.* at 655. The *Abrams* court found no constitutional violation where the suspect observed a state trooper pulling over another vehicle, exited his vehicle, questioned the state trooper on his reasons for the traffic stop, refused to obey the trooper's repeated instructions to return to his own vehicle while the trooper carried out the traffic stop, and was ultimately charged with obstructing a police officer. The case at bar is analogous to *Abrams*; therefore, any concerns by Phillips that his arrest ran afoul of the principles articulated in *City of Houston* is misplaced. *See also State v. Occhino*, 572 N.W.2d 316, 320-21 (Minn.App. 1997) (declaring that defendant's repeated verbal interruptions of officer, interfering with officer's ability to perform official duties, and ignoring requests that he stop interrupting her, "exceeded ordinary verbal criticism of the police and rose to the unlawful level" of interfering with performance of official duties).

right to be free from excessive force during an arrest. *See, e.g., McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1244 (11th Cir. 2003).[33]

The Fourth Amendment does not forbid the use of all force in connection with an arrest. Indeed, "[t]he right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Bashir*, 445 F.3d at 1332 (citing *Graham*, 490 U.S. at 396). In that regard, the Eleventh Circuit has taken pains to "stress that not every intrusion, touching, discomfort or embarrassment during an arrest is actionable as a violation of the Fourth Amendment. Some of these acts may be provably accidental or just too insignificant and thus within the range of the constitutionally reasonable." *Hicks v. Moore*, 422 F.3d 1246, 1253-54 (11th Cir. 2005). The Fourth Amendment protects people only from "unreasonable seizures," which "contemplates more than the unnecessary strike of a nightstick, sting of a bullet, or thud of a boot." *Id.* at 1253.

To determine whether the use of force is reasonable, courts examine whether officers' actions are objectively reasonable based on the surrounding facts and circumstances. *See Garrett*, 378 F.3d at 1279.[34] "Use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (citations omitted). This judgment requires careful balancing of the nature and quality of the intrusion on the individual's interests, on the one hand, and the governmental interests at stake, on the other hand. *See id.* at 1347.

---

[33] Although the Fourth Amendment provides protection from both wrongful arrest and excessive force during arrest, Phillips' excessive force claim is independent of, and must be analyzed separately from, his wrongful arrest claim. *See Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) ("[A] claim for excessive force during a legal stop or arrest is a discrete claim.").

[34] For purposes of a Fourth Amendment excessive force analysis, what is reasonable turns on "all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Hicks*, 422 F.3d at 1254 (citations omitted); *see also Vinyard*, 311 F.3d at 1349 n.14 ("The border between permissible and excessive force is marked by a fact-intensive test ... [and] thus requires careful attention to the facts and circumstances of each particular case."). Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Draper*, 369 F.3d at 1278 (citation omitted).

Factors that bear on this balancing test include (1) the severity of the crime, (2) whether the suspect poses an immediate threat to law enforcement officers or others, (3) whether the suspect is actively resisting or attempting to flee from arrest, (4) the need for the application of force, (5) the relationship between the need and amount of force used, (6) the extent of any injury inflicted, and (7) whether the force was applied in good faith or maliciously and sadistically. *See Vinyard*, 311 F.3d at 1347; *Lee*, 284 F.3d at 1197-98; *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000). Because this is an objective inquiry, an officer's underlying intent or motivation is irrelevant. Indeed, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397.

Given the absence of bright-line rules and the inherently fact-specific nature of excessive force claims, the Eleventh Circuit has opined that qualified immunity applies unless either (a) a controlling and materially similar case declares the official's conduct unconstitutional, or (b) the conduct was so obviously at the core of what the Fourth Amendment prohibits that its unlawfulness should have been readily apparent to the official. *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000).[35] Thus, "in an excessive force case, qualified immunity applies unless application of the standard would inevitably lead every reasonable officer ... to conclude the force was unlawful." *Slicker*, 215 F.3d at 1232 (citation omitted). Nonetheless, summary judgment for a defendant on qualified immunity grounds should be denied where the evidence taken in the light most favorable to the plaintiff raises a question of fact as to whether an officer's actions constitute excessive force. *See Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002).[36]

---

[35] On the latter point, sometimes the facts of a case are "so far beyond the hazy border between excessive and acceptable force that [every objectively reasonable officer] had to know he was violating the Constitution even without caselaw on point." *Priester*, 208 F.3d at 926.

[36] Despite the high threshold for withstanding a qualified immunity defense, plaintiff's excessive force claim benefits from the principle that the reasonableness of the use of force in particular circumstances is often regarded as a jury issue not amenable to resolution on summary judgment. *See Dominguez v. Metropolitan Miami-Dade County*, 2006 WL 334243, *2 (11th Cir. Feb. 14, 2006) (citation omitted) ("Because questions of reasonableness are not well-

As discussed *supra*, many of the relevant facts are hotly contested. Nonetheless, the record reviewed in the light most favorable to Phillips discloses the following material facts for the excessive force inquiry: (i) Phillips was arrested for obstructing governmental operations after he argued with Trooper Irvin as the latter conducted a traffic stop on plaintiff's property; (ii) from the moment he was handcuffed, Phillips ceased all resistance and was 100% compliant with Trooper Irvin; (iii) Phillips never attempted to flee; (iv) Phillips never threatened Trooper Irvin or anyone else; (v) Trooper Irvin's words, tone of voice, and actions in arresting Phillips support a reasonable inference that Trooper Irvin was angry with Phillips; (vi) after subduing and handcuffing Phillips, Trooper Irvin violently jerked him up by the chain on the cuffs, raising his hands high behind his back and inflicting injury, all in a manner that Trooper Irvin had been trained never to do; (vii) Trooper Irvin then forcibly moved Phillips around the back of the car, bumping him into the rear of the car; (viii) in moving Phillips to the back seat of the patrol car, Trooper Irvin slammed his head against the frame of the vehicle; (ix) Trooper Irvin disregarded repeated pleas from Phillips that the handcuffs were too tight, that the cuffs were cutting off his circulation, that the cuffs were hurting him, and that he was injured; (x) despite Phillips' pleas for help, the handcuffs were not checked or loosened for more than 15 minutes; and (xi) as a result of Trooper Irvin's actions, Phillips sustained permanent bilateral nerve damage to his wrists, significant back injuries, temporary swelling of the eyes, and numbness in his leg.

These facts, if proven at trial, would establish that Trooper Irvin's use of force was both excessive and objectively unreasonable. The criteria established by the Eleventh Circuit for balancing the use of force against governmental interests unambiguously support this conclusion. The crime for which Phillips had been arrested was a non-violent misdemeanor. Once he was handcuffed, Phillips posed no threat to Trooper Irvin or anyone else and made no effort to resist or flee. There was no evident need for Trooper Irvin to utilize force on a docile, compliant, handcuffed, subdued plaintiff who had been arrested for a misdemeanor, yet Trooper Irvin yanked him up by the chain on the handcuffs, bumped him into the rear of the car, smacked his head against the door frame of the patrol car, and ignored plaintiff's recurring pleas that the

---

suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury.").

handcuffs were too tight and were hurting him for more than 15 minutes after Phillips had been handcuffed and deposited in the rear of the patrol vehicle. Moreover, all of these events occurred under circumstances supporting a reasonable inference that Trooper Irvin was acting out of anger because Phillips had expressed an intent to report Trooper Irvin, and resulted in Phillips sustaining permanent injuries to his wrists and back.

As of March 2003, the law of the Eleventh Circuit was clearly established that utilizing significant force on a subdued, handcuffed suspect was unconstitutional under the Fourth Amendment. In *Vinyard*, 311 F.3d at 1340, a police officer was held to have used excessive force while transporting a handcuffed suspect to jail in a partitioned police cruiser, when he stopped the car, grabbed her arm in a rough manner that caused bruising, pulled her head back by her hair, and sprayed her face with pepper spray, all as she sat in the back seat with her hands cuffed behind her back and her feet on the floorboard. The *Vinyard* panel concluded that this conduct "plainly constituted unreasonable and excessive force in violation of [the suspect]'s constitutional rights under the Fourth Amendment." *Id.* at 1349 (reasoning that all of the relevant factors weighed heavily and obviously in favor of finding excessive force).[37] Similarly, in *Lee*, 284 F.3d at 1188, a police officer arrested and handcuffed the plaintiff for a horn violation, then slammed her head onto the trunk of the car despite her lack of resistance. The Eleventh Circuit deemed it "abundantly clear" that the officer "used force that was plainly excessive, wholly unnecessary, and, indeed, grossly disproportionate." *Id.* at 1198. In reaching this conclusion, the *Lee* court observed that the plaintiff had been arrested for a minor offense, that she posed no threat, that she neither resisted nor attempted to flee, and that there was no legitimate law enforcement need to slam the plaintiff's head against the car after she was secured in handcuffs. Indeed, "a reasonable officer could not possibly have believed that [the officer] had the lawful authority to take her to the back of her car and slam her head against the trunk *after* she was arrested, handcuffed, and completely secured, and after any danger to the arresting

---

[37] According to *Vinyard*, "no objectively reasonable police officer could believe that, after Vinyard was under arrest, handcuffed behind her back, secured in the back seat of a patrol car with a protective screen between the officer and the arrestee, and officer could stop the car, grab such arrestee by her hair and arm, bruise her and apply pepper spray" to stop the arrestee from uttering obscenities during a four-mile ride to jail. *Id.* at 1355.

officer as well as any risk of flight had passed. Once an arrestee has been fully secured, such force is wholly unnecessary to any legitimate law enforcement purpose." *Id.* at 1199.[38]

When viewed in the light most favorable to Phillips, the record shows that Trooper Irvin utilized significant force against a docile, non-resistant, secured suspect who had been arrested for a minor offense. The record further supports a conclusion that the relevant factors identified by the Eleventh Circuit weigh heavily and unequivocally in favor of a finding that Trooper Irvin utilized force that was both excessive and completely unnecessary under the operative facts and circumstances. Moreover, binding precedents had confirmed as of March 2003 that the use of substantial force against a compliant, subdued arrestee was a violation of the Fourth Amendment. Because no reasonable officer would have believed that the level of force utilized by Trooper Irvin (under plaintiff's version of the facts) after handcuffing Phillips was necessary in the situation at hand, Trooper Irvin's bid for summary judgment on qualified immunity grounds must be rejected.

In seeking a qualified immunity determination, defendants make three unsuccessful

---

[38] *Vinyard* and *Lee* are hardly unique in the landscape of Eleventh Circuit jurisprudence. To the contrary, other Eleventh Circuit decisions have either found excessive force violations or denied qualified immunity where law enforcement officers have engaged in unnecessary use of force after arresting and subduing a suspect. *See, e.g., Slicker*, 215 F.3d at 1233 (denying qualified immunity for officer who kicked handcuffed arrestee and repeatedly knocked his head on the ground); *Priester*, 208 F.3d at 926-27 (denying qualified immunity to officers who allowed police dog to attack arrestee who lay on the ground in compliance with officers' instructions); *Smith v. Mattox*, 127 F.3d 1416, 1418-20 (11th Cir. 1997) (denying qualified immunity to officer who broke arm of suspect who was docile, was offering no resistance and had complied with officer's request to get down). Upon reviewing this body of precedent, one court has astutely observed that "[c]ases in which the language of the Fourth Amendment itself has been sufficient to put the officer on notice that his conduct was in violation of the law appear to be cases involving the use of significant force after an arrestee has been subdued. For example, beating a suspect, kicking a suspect, or slamming the head of a suspect [into] the ground is conduct which deprives the law enforcement officers of qualified immunity when the suspect was handcuffed and did not struggle or resist the officers in any way and did not attempt to flee." *Johnson v. Wright*, 423 F. Supp.2d 1242, 1258 (M.D. Ala. 2005) (citation omitted). This case fits neatly within that paradigm. Thus, as of March 2003, it was clearly established in the Eleventh Circuit that the use of significant force against a compliant, non-resistant arrestee who had already been subdued and handcuffed was unconstitutional under the Fourth Amendment.

arguments. First, they offer Trooper Irvin's version of the facts that he believed Phillips had "cornered" Trooper Irvin against his car (which is disputed), that Trooper Irvin believed Phillips had poked him or attempted to poke him (which is also disputed), that Phillips resisted arrest (which is also disputed), that Trooper Irvin did not hear Phillips' complaints that the handcuffs were injuring him (also disputed), that Phillips did not hit his head (also disputed), that any blow to Phillips' head was an accident (also disputed) and the like. (Defendants' Brief, at 13-15; Reply Brief, at 5.)[39] It is an elementary principle of federal civil procedure that a Rule 56 movant is not entitled to handpick record facts most favorable to him, while ignoring adverse facts, yet that is precisely what defendants attempt to do. Second, defendants liken this case to *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997), wherein an officer was awarded qualified immunity on an excessive force claim where an arrestee complained that he experienced pain while being handcuffed for 20 minutes and suffered skin abrasions for which he did not seek medical treatment. Had this case involved no evidence of force other than Phillips' complaint that the cuffs were too tight, *Gold* might be instructive. But *Gold* is distinguishable because that case did not involve blows to the head or the jerking of a suspect by the handcuff chain, did not involve serious injury to the arrestee, and apparently included no more than a solitary complaint from the arrestee that the cuffs were too tight. The Court is of the opinion that the facts in the *Vinyard* / *Lee* / *Slicker* / *Priester* line of authorities are far closer to those presented by plaintiff

---

[39] Remarkably, defense counsel also speculates that Trooper Irvin "could have felt some urgency to get Mr. Phillips into his patrol car to calm the situation down." (Defendants' Brief, at 14.) But a defendant may not be awarded summary judgment based on defense counsel's conjecture as to how their client "could have felt." Defendants' contention that Phillips' wrist injury "was not necessarily due to an application of excessive force" (*id.* at 15) is similarly unhelpful and unavailing on summary judgment. Additionally, the Court is unpersuaded by defendants' argument that when another trooper spoke with Phillips approximately six minutes after the handcuffs were applied, Phillips did not complain that the cuffs were too tight. (*Id.* at 15-16.) That statement is factually correct; however, the recording reveals that the trooper who spoke with Phillips cursed at him, angrily asked him what his problem was, and advised him in profanity-laced terms that he needed to let Trooper Irvin do his job. (*See* Defendants' Exh. 4.) The recording supports a reasonable inference that Phillips never had a reasonable opportunity to seek assistance from this unidentified trooper, who conversed with Phillips only long enough to berate and spout hostility at him.

here than are the facts in *Gold*; therefore, *Gold* is not particularly illuminating for this analysis.[40] Third, defendants argue that the medical records reflect that Phillips did not sustain a "significant head injury" when being slammed against the car frame. But the Eleventh Circuit has accorded a frosty reception to such arguments, because "objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm." *Lee*, 284 F.3d at 1200.

For all of these reasons, the Court finds that Trooper Irvin is not entitled to qualified immunity on the Eighth Cause of Action at this stage. Defendants' Motion for Summary Judgment is **denied** as to that claim.

*4. Procedural Due Process.*

In addition to the Ninth Cause of Action ascribing Fourth Amendment violations to defendants, the Tenth Cause of Action alleges that the arrest and detention of Phillips violated procedural due process by denying plaintiff's rights to life, liberty and pursuit of protection of personal property. (Complaint, ¶ 45.) Defendants maintain that Trooper Irvin is entitled to qualified immunity on this claim. Because he was undoubtedly performing discretionary functions in pulling over the log truck and arresting Phillips for obstruction of governmental operations, Trooper Irvin is entitled to qualified immunity on the procedural due process claim unless Phillips demonstrates that a reasonable jury could find that Trooper Irvin violated a

---

[40] The same conclusion applies to other Eleventh Circuit cases wherein the court concluded that the level of force was *de minimis* and therefore insufficient to maintain a cause of action for excessive force. *See Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir.2000) (grabbed plaintiff and shoved him a few feet against vehicle, pushed knee in back and head against van, and handcuffed him); *Jones v. City of Dothan*, 121 F.3d 1456, 1458 (11th Cir.1997) (slammed plaintiff against the wall, kicked legs apart and required plaintiff to raise hands above head during arrest); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir.1993) (pushed plaintiff against wall while handcuffed); *see also Lee*, 284 F.3d at 1199-1200 (discussing these *de minimis* force cases). For example, in *Nolin*, the Eleventh Circuit found that an officer used *de minimis* force and was entitled to qualified immunity where he grabbed the arrestee from behind, threw him against a van three or four feet away, kneed him in the back, pushed his head against the van, searched his groin in an uncomfortable manner, and then handcuffed him. *Nolin* is compelling authority that the striking of the handcuffs on Phillips' left hand, in and of itself, was not excessive force, but it sheds no light on the legitimacy of post-handcuffing force utilized against a compliant arrestee. Of course, the facts in this case must be considered as a cumulative whole in assessing whether Trooper Irvin utilized excessive force.

clearly established constitutional right of which a reasonable government official would have known.

As presented, plaintiff's procedural due process claim is an enigma. A reading of the Complaint suggests that this claim arises from Phillips' arrest and detention, without specifying what process Phillips contends he was entitled to before he could properly be arrested and detained. Such a theory appears untenable, as a matter of law, given the Court's findings, *supra*, of arguable probable cause for Phillips' arrest. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1560 (11th Cir. 1993) (even if government officials' subjective motivation was to ruin, harass and oppress plaintiff, their objective conduct in issuing citations and making arrests did not violate procedural due process unless such conduct was plainly unjustified). Perhaps recognizing the obvious infirmities in this approach, plaintiff drastically revamps his procedural due process claim in his summary judgment brief. Abandoning the arrest/detention aspects of that due process claim, Phillips now argues that Trooper "Irvin's actions in blocking or partially obstructing the main entrance to Phillips' business ... interfered with Phillips' business, costing him profits, and amounts to a deprivation of property and liberty without procedural due process." (Opposition Brief, at 26.) No other procedural due process violation is identified in the brief; therefore, the Court assumes that Phillips' procedural due process claim now rests exclusively on the theory that Trooper Irvin's vehicle obstructed the south entrance of the Truck Stop.

This ill-conceived claim is due to be dismissed for three reasons. First, Phillips has come forward with no evidence, other than his own unsupported speculation, that he lost profits as a result of Trooper Irvin's parking his patrol vehicle near the south entrance to the Truck Stop. It is undisputed that the south entrance was not completely blocked off to traffic, that the north entrance remained fully accessible, and that vehicles also utilized a ready means of ingress to and egress from the Truck Stop on adjacent property just south of the Truck Stop.[41] Vehicular

---

[41] Plaintiff complains that vehicles accessing the Truck Stop from the adjacent property to the south were trespassing on the neighboring business's property. (Phillips Aff., ¶¶ 6, 8, 10.) Even if correct, however, this allegation is devoid of analytical significance. There is no suggestion that the adjoining property owner took any action at that time to prevent vehicles from crossing his property to reach or leave the Truck Stop, that the adjoining property owner

traffic into and out of the Truck Stop continued throughout the brief duration of the traffic stop. On this record, no reasonable jury could conclude that Trooper Irvin's parking decision deprived Phillips of the use of his property or the income produced by same, or otherwise implicated Phillips' due process rights. Second, even if there were evidence of a constitutional violation, Phillips offers no indication as to what process he claims to have been entitled to before Trooper Irvin could lawfully park his patrol vehicle near the south entrance to the Truck Stop. Third, and most obviously, Phillips has failed to make any showing that, at the time of the incident, every objectively reasonable police officer would have realized that parking a patrol vehicle near the south entrance of the Truck Stop while conducting a lawful traffic stop violated already clearly established federal law.[42] There being no clearly established law placing Trooper Irvin on notice that parking near the south entrance worked an injustice of constitutional dimensions upon Phillips, the Court **dismisses** the procedural due process claim in the Tenth Cause of Action on the basis of qualified immunity.

***C. Federal Claims Against Col. Coppage.***

The Complaint is not aimed exclusively at Trooper Irvin; rather, plaintiff also asserts a full complement of § 1983 causes of action (as well as pendent state-law claims) against Col. Coppage, the Director of the Alabama Department of Public Safety. Indeed, the Eighth through Eleventh Causes of Action purport to hold Col. Coppage liable for the § 1983 wrongful arrest,

---

complained to Phillips about the vehicular traffic that morning, or that Phillips or his customers were in any way adversely affected by the short-term, temporary rerouting of traffic patterns into and out of the Truck Stop. The salient point is that customers had multiple readily available means of ingress and egress from the Truck Stop during the 45 minutes that Trooper Irvin was parked there before Phillips delayed and distracted him. The "trespass" allegation is a red herring.

[42] Phillips also has made no attempt to satisfy his burden of showing that available state remedies for any such deprivation were inadequate. *See, e.g.*, *Flint Elec. Membership Corp. v. Whitworth*, 68 F.3d 1309, 1314 (11th Cir. 1995) (explaining that a plaintiff has not suffered a violation of his procedural due process rights unless and until the State refuses to make available a means to remedy the deprivation); *Williams v. City of Tampa*, 2006 WL 213848, *2 (M.D. Fla. Jan. 27, 2006) (although violation of procedural due process may support § 1983 claim, plaintiff cannot succeed without demonstrating that available state remedies are inadequate).

excessive force, and due process causes of action. Col. Coppage now seeks entry of summary judgment in his favor as to these claims, arguing that there is no valid basis for holding him personally liable under § 1983 and that he is entitled to qualified immunity.[43]

It is beyond cavil that Col. Coppage may not be held vicariously liable under § 1983 for the wrongful acts of Trooper Irvin. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1295 (11th Cir. 2003) (same). Indeed, "[s]upervisors can be liable under section 1983 only if they actually participated in the allegedly wrongful act, or if a causal connection exists between their acts and the alleged violation." *Post*, 7 F.3d at 1560-61.[44] The undisputed facts show that Col. Coppage did not personally participate in any of the events at issue herein; therefore, Phillips' § 1983 claims against him fail unless a causal connection exists between Col. Coppage's acts and the alleged constitutional violations perpetrated by Trooper Irvin.

The requisite "causal connection" can be found where either (a) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or (b) "a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to

---

[43] Unfortunately, having devoted dozens of pages to analysis of the Fourth Amendment wrongful arrest and excessive force claims as to Trooper Irvin, both sides' briefs taper off considerably as to the claims against Col. Coppage (as well as certain of the other remaining causes of action). In addressing the parties' respective summary judgment positions, the undersigned will not articulate their arguments for them.

[44] *See also Cottone*, 326 F.3d at 1360 ("supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."); *McKinney v. DeKalb County*, 997 F.2d 1440, 1443 (11th Cir. 1993) ("A supervisor can be held liable under § 1983 when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff and his conduct was causally related to the constitutional violation committed by his subordinate.").

stop them from doing so." *Cottone*, 326 F.3d at 1360 (citations omitted). Plaintiff contends that Col. Coppage may be held liable under the "widespread abuse" prong of the "causal connection" standard; therefore, his claims will be evaluated under that standard.

The Eleventh Circuit has held that "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *see also Braddy v. Florida Dept. of Labor and Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) (same). The "widespread abuse" requirement contemplates that constitutional violations must "occur with frequency," such as where "rights are systematically violated on a near-daily basis" via a "repeated pattern of unconstitutional behavior." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1294 (11th Cir. 2004). Plaintiff admits that he has presented no evidence of widespread constitutional abuses by Alabama state troopers; however, he contends that Trooper Irvin's personnel file placed Col. Coppage on notice that Trooper Irvin had previously used excessive force, and that issues of fact remain as to whether Col. Coppage's "discipline and supervision of [Trooper] Irvin has been adequate." (Opposition Brief, at 29.) In particular, plaintiff points to two earlier episodes involving Trooper Irvin. The first is an April 2002 incident in which Trooper Irvin sprayed a suspect with pepper spray, as a result of which he received a reprimand for violating the Department's use of force policy. (Plaintiff's Exh. 10; Irvin Dep., at 141, 143-44.)[45] Plaintiff offers no evidence that Trooper Irvin was ever found or suspected to have violated the excessive force policy on any other occasion prior to March 4, 2003. The second incident cited by plaintiff is a July 2002 incident, wherein Trooper Irvin was reprimanded for failing to give his location to the dispatcher and failing to advise the dispatcher promptly that a situation was under control. (Plaintiff's Exh. 10, at 25; Irvin Dep., at 171-76.)

---

[45] Despite the fact that he relies on only a few pages of it, plaintiff has placed Trooper Irvin's entire personnel file (which numbers well over 150 pages) in the summary judgment record. (Plaintiff's Exh. 10.) In addition to unnecessarily clogging the court file with superfluous materials and forcing the Court to wade through dozens of immaterial documents to locate the specific pages on which plaintiff relies, this practice runs afoul of Local Rule 5.5(c), which provides that "[i]f discovery materials are germane to any motion or response, ***only the relevant portions of the material shall be filed with the motion or response.***" *Id.* (emphasis added).

The July 2002 incident had no apparent link to any excessive force, wrongful arrests, or other constitutional deprivations allegedly perpetrated by Trooper Irvin, and is therefore of negligible relevance here.[46]

If the Court understands correctly, then, plaintiff would have the Court find the "history of widespread abuse" necessary to hold Col. Coppage liable under § 1983 for Trooper Irvin's conduct on the basis of a single instance in which Trooper Irvin was reprimanded for violating the Department's use of force policy, and another instance in which Trooper Irvin was reprimanded for failing to provide sufficient information to a dispatcher. Such flimsy evidence is woefully inadequate to constitute "a history of widespread abuse" under applicable Eleventh Circuit precedent. Col. Coppage is clearly entitled to summary judgment on plaintiff's § 1983 claims (the Eighth, Ninth, Tenth and Eleventh Causes of Action) because plaintiff has come forward with no evidence from which supervisory liability might be appropriately imposed.[47]

---

[46] With a sleight of hand, plaintiff emphasizes that Trooper Irvin's personnel file includes documentation of a "problem with the loss of temper" and of a need for "anger management classes or training." (Opposition Brief, at 29.) Plaintiff is less forthcoming about the fact these documents are dated more than one year <u>after</u> the events at issue here. Indeed, there is evidence that Trooper Irvin became involved in two separate altercations in 2004, one in which he became belligerent with medical personnel regarding the transport of his wife for medical treatment, and the other in which he argued with a parking attendant who had given him a parking ticket and "shot him a bird." (*See* Plaintiff's Exh. 10; Opposition Brief, at 29; Response to Suggested Determinations of Fact, at ¶¶ 34, 35.) But these events are irrelevant to Col. Coppage's liability in this lawsuit. That Trooper Irvin may have exhibited anger, professionalism and self-control problems a year after the events at issue here could not possibly have placed Col. Coppage on notice that further reprimands or disciplinary action were needed as to Trooper Irvin prior to the March 2003 incident. Thus, Trooper Irvin's disciplinary problems of 2004 have no bearing whatsoever on this litigation, and are unhelpful to the Court's summary judgment analysis.

[47] Plaintiff offers two other arguments in support of his § 1983 claims against Col. Coppage. Both contentions border on frivolity. First, he argues that "there is a question of fact as to whether this discipline and supervision of Irvin has been adequate." (Opposition Brief, at 29.) But Phillips offers no authority for the proposition that § 1983 supervisory liability may be predicated on inadequate discipline/supervision, without more. The Eleventh Circuit authority cited *supra* and in plaintiff's own memorandum is to the contrary. Even if such authority did exist, plaintiff's argument would still fail because plaintiff has offered no evidence that, as of the morning of March 4, 2003, Col. Coppage had any reason to believe that the 2002 reprimand of Trooper Irvin for violating the use of force policy had not been successful or adequate, or that

***D. State-Agent Immunity and State Law Individual Capacity Claims.***

Having addressed plaintiff's § 1983 claims, the Court now turns to plaintiff's grab-bag of state law claims articulated as the First through Seventh Causes of Action, including claims for negligence, wantonness, willfulness, malicious prosecution, false imprisonment, and assault and battery. (Complaint, ¶¶ 9-32.)[48] Defendants maintain that they are entitled to state-agent immunity with respect to all of these causes of action, and that summary judgment is therefore appropriate.[49]

Alabama Code § 6-5-338 provides that a duly appointed state, county or municipal peace officer "shall have immunity from tort liability arising out of his or her conduct in the performance of any discretionary function within the line and scope of his or her law enforcement duties." *Id.* The Alabama Supreme Court refined its standard for entitlement to discretionary function immunity, or more precisely state-agent immunity, in *Ex parte Butts*, 775 So.2d 173 (Ala. 2000). In *Butts*, the court adopted the "restatement" of the law of state-agent immunity that had been advanced by a plurality in *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000). Under the *Butts* / *Cranman* standard, a state agent is immune from suit in his personal capacity for claims based upon "exercising judgment in the enforcement of the criminal laws of the State, including,

---

there had been any further violations by Trooper Irvin in the interim. Second, plaintiff insists that his § 1983 claims against Col. Coppage for injunctive relief should remain because Trooper Irvin has never attended anger management classes and the Department of Public Safety has never instituted a policy or training "that a trooper should not stop in the main entrance to a private business, during the busiest time of day." (*Id.* at 30.) This argument is baseless. Without a showing that Col. Coppage can be liable under § 1983 for any constitutional deprivations in this case, plaintiff cannot possibly be entitled to a § 1983 injunction compelling Col. Coppage to order Trooper Irvin to attend anger management classes or to retool the Department's parking policies.

[48] The analysis for the Fourth Cause of Action (intentional infliction of emotional distress) is distinct and therefore will be presented in section E, *infra*.

[49] This issue does not simply mirror the federal qualified immunity discussion, but instead demands separate analysis. Qualified immunity under federal law and state-function immunity under Alabama law are neither synonymous nor co-extensive; indeed, federal immunity employs an objective, reasonable-officer standard, while state immunity is a subjective inquiry into what the officer actually believed. *See Scarbrough v. Myles*, 245 F.3d 1299, 1303 n.9 (11th Cir. 2001) (contrasting standards for types of immunity).

but not limited to, law-enforcement officers' arresting or attempting to arrest persons." *Cranman*, 792 So.2d at 405. No immunity is available, however, "if an officer acts with willful or malicious intent or in bad faith." *Borders v. City of Huntsville,* 875 So.2d 1168, 1178 (Ala. 2003); *see also Cranman*, 792 So.2d at 405 (no state-agent immunity if agent "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law"); *Ex parte Davis*, 721 So.2d 685, 689 (Ala. 1998) ("a State officer or employee is not protected by discretionary immunity if in performing his discretionary functions he willfully, maliciously, fraudulently, or in bad faith injures someone").

In examining whether peace officers are entitled to state-agent or discretionary-function immunity in the context of an alleged false arrest or false imprisonment, the Alabama Supreme Court has held that such immunity applies if there is arguable probable cause for the arrest. *See Borders*, 875 So.2d at 1179-80. The same "arguable probable cause" threshold governs eligibility for the defense of state-agent or discretionary-function immunity with respect to claims of malicious prosecution. *See Paullin v. City of Loxley, AL*, 2006 WL 690855, *4 (11th Cir. Mar. 20, 2006).[50] The Court has already found, *supra*, that the record in the light most favorable to plaintiff reveals that Trooper Irvin possessed arguable probable cause to arrest Phillips. That finding holds true regardless of whether Trooper Irvin's conduct is examined from an objective or subjective perspective; therefore, he is entitled to state-agent immunity on Phillips' state law claims challenging the propriety of his arrest and the criminal charges against him. Plaintiff's state law claims are properly dismissed as to Trooper Irvin on the basis of state-agent immunity to the extent that they arise from the alleged false arrest or the ensuing criminal prosecution of Phillips for obstructing governmental operations.[51]

---

[50] In his opposition brief, Phillips utilizes, repeatedly and without objection, the "arguable probable cause" standard in the state-agent immunity analysis for the malicious prosecution claim. (Opposition Brief, at 34-35.) Because plaintiff concedes that "arguable probable cause" is the appropriate standard for state-agent immunity as to the malicious prosecution claim, the Court will not further delve into Alabama case law for confirmation that the *Borders* "arguable probable cause" standard applies with equal force to claims of state-agent immunity in the malicious prosecution context.

[51] This determination defeats the Fifth Cause of Action (malicious prosecution) and the Sixth Cause of Action (false imprisonment) in their entirety, and is fatal to the First

The outcome is different with respect to plaintiff's state law claims against Trooper Irvin pertaining to the use of force. As noted above, state-agent immunity has no application if a plaintiff demonstrates that the state agent has acted "willfully," "maliciously" or "in bad faith."[52] Construed in the light most favorable to Phillips, the record supports a reasonable inference that Trooper Irvin acted willfully, maliciously, and/or in bad faith in his treatment of Phillips after handcuffing him. Plaintiff's evidence is that, moments after he informed Trooper Irvin that he intended to report him, the two men engaged in an escalating argument during which Trooper Irvin appeared angry. Trooper Irvin then arrested and handcuffed Phillips, after which Trooper Irvin engaged in several acts of unnecessary force against a subdued, non-resisting arrestee, such as jerking him up by the chain on the handcuffs, slamming his head into the door frame of the patrol vehicle, and disregarding repeated pleas of help and cries of pain that the handcuffs were too tight. This evidence plainly raises a jury question of malice sufficient to preclude a grant of summary judgment to Trooper Irvin on the state law force claims on a state-agent immunity theory. *See generally Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996) (concluding that a fact question as to whether officer used excessive and illegal force in arrest precluded summary judgment for officer on discretionary-function immunity, given evidence that he had abused a suspect who had been detained and subdued).[53] For that reason, Trooper Irvin's Motion for Summary Judgment as

(negligence), Second (wantonness) and Third (willfulness) claims to the extent that they hinge on allegations of false or otherwise improper arrest or prosecution.

[52] For purposes of this analysis, malice "may be inferred from a lack of probable cause or from mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or unlawful." *Wal-Mart Stores, Inc. v. Goodman*, 789 So.2d 166, 174 (Ala. 2000); *see also Hinson v. Holt*, 776 So.2d 804, 812 (Ala.Civ.App. 1998) ("Legal malice may be defined as the intentional doing of a wrongful act without just cause or excuse, either with an intent to injure the other party or under such circumstances that the law will imply an evil intent.") (citation omitted).

[53] Defendants' conclusory argument that there is no evidence of malice is not compelling. After all, the nature of malice is that it is typically incapable of positive, direct proof, but must instead be "rested on inferences and deductions from facts that can be presented to the trier of fact." *Hinson*, 776 So.2d at 812. As outlined above, sufficient inferences and deductions supporting a finding of malice exist, so this issue must be submitted to the trier of fact at trial.

to the Seventh Cause of Action (assault and battery) as well as the portions of the First (negligence), Second (wantonness) and Third (willfulness) Causes of Action pertaining to Trooper Irvin's use of force is **denied**.

For reasons that are not entirely clear, the Complaint purports to assert the entire range of state law claims against Col. Coppage, as well, on a theory that he failed to train, supervise, direct and control Trooper Irvin properly, and that he therefore is liable on a panoply of claims for negligence, wantonness, willfulness, malicious prosecution, false imprisonment, and assault and battery. Yet plaintiff comes forward with no evidence suggesting that, as of March 2003, Col. Coppage had negligently, wantonly or willfully failed to supervise, train or direct Trooper Irvin.[54] Even if such evidence exists, state-agent immunity encompasses conduct of a state agent "exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as ... hiring, firing, transferring, assigning or ***supervising personnel***." *Cranman*, 792 So.2d at 405 (emphasis added). Plaintiff has made no showing that Col. Coppage ever acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law in any respect prior to March 4, 2003. Therefore, state-agent immunity bars plaintiff's claims of negligence, wantonness, willfulness, malicious prosecution, false imprisonment, and assault and battery against Col. Coppage.

***E. Outrage Claim.***

Defendants also seek summary judgment on plaintiff's Fourth Cause of Action, which sounds in intentional infliction of emotional distress.

A plaintiff attempting to prove the tort of outrage bears a heavy burden. *See Ex parte Crawford & Co.*, 693 So.2d 458 (Ala. 1997). To withstand summary judgment, the plaintiff must

---

[54] Indeed, plaintiff's 65-page summary judgment submission offers no response of any kind to defendants' invocation of state-agent immunity concerning the claims against Col. Coppage. Instead, plaintiff limits his discussion of Col. Coppage to saying that he should be liable for inadequately disciplining and supervising Trooper Irvin upon notice of a single instance of violation of the use of force policy in 2002, a single instance of failure to maintain communications with dispatch in 2002, and two incidents that occurred fully a year after the events at issue in this lawsuit. These facts do not affect, or even bear on, the state-agent immunity framework, much less identify conduct that might support imposition of state law liability against Col. Coppage on plaintiff's theory.

make a showing that the defendants engaged in conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Servic Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980). The Alabama Supreme Court has strictly enforced the *Inmon* test. While Alabama courts do recognize this tort, they have deemed it a "very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1993) (noting that the Alabama Supreme Court "has held in a large majority of the outrage cases reviewed that no jury question was presented"); *see also House v. Corporate Services, Inc.*, 882 F.Supp. 161, 165 (M.D.Ala.1995) ("the Alabama Supreme Court is not predisposed to recognize that tort of outrage claims present jury questions"). So circumscribed, in fact, is the reach of the tort of outrage that the Alabama Supreme Court has allowed such claims only in three limited circumstances: "cases having to do with wrongful conduct in the context of family burials; cases where insurance agents employed heavy-handed, barbaric means to coerce a settlement; and cases involving egregious sexual harassment." *Carter v. Harris*, 64 F. Supp.2d 1182, 1194 (M.D. Ala. 1999) (citing *Thomas*, 624 So.2d at 1044).

A plaintiff claiming outrage must show: "(1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it." *Crawford*, 693 So.2d at 460. Plaintiff has not satisfied the second or third of these elements. Substantial case law reflects that excessive physical force, by itself, does not satisfy the "extreme and outrageous" requirement. *See McCray v. City of Dothan*, 169 F. Supp.2d 1260, 1300 (M.D. Ala. 2001) (officers' actions of attacking plaintiff in presence of his children, choking him, falsely arresting him, and leaving his distraught children with strangers was unseemly, but not so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society); *Newton v. Town of Columbia*, 695 So.2d 1213, 1218 (Ala.Civ.App. 1997) (assault by officer does not "necessarily constitute[] extreme and outrageous conduct sufficient to support an action for intentional infliction of emotional distress").[55] Even if it could, plaintiff has come

[55] Plaintiff cites only one case in which law enforcement misconduct has been held to support an outrage claim under Alabama law. In *Woodley v. City of Jamison*, 770 So.2d 1093

forward with no evidence or argument that these events caused Phillips "emotional distress so severe that no reasonable person could be expected to endure it." *Crawford*, 693 So.2d at 460; *see generally, U.S.A. Oil, Inc. v. Smith*, 415 So.2d 1098, 1100-01 (Ala.Civ.App. 1982) (evidence that plaintiff could not sleep, was upset, and cried often, was not severe enough to support outrage claim).

The courts of Alabama have set the bar extremely high for plaintiffs who wish to reach a jury on an outrage theory. After careful review of the record and the parties' arguments, the Court concludes that the evidence in the light most favorable to Phillips establishes neither that Trooper Irvin's conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency, nor that Phillips sustained emotional distress beyond the pale of what any reasonable person could be expected to endure. Summary judgment will enter in defendants' favor on this cause of action.

***F. Purported Claim for First Amendment Retaliation.***

In his memorandum of law in opposition to the Motion for Summary Judgment, Phillips complains for the first time that Trooper Irvin's conduct is actionable under the First Amendment as retaliation for protected speech. (Opposition Brief, at 30-32.) This allegation is surprising, inasmuch as nowhere in the 18-page, 11-count Complaint does plaintiff purport to assert a § 1983

(Ala.Civ.App. 1999), the court determined that a police officer, who had made obscene telephone calls to and otherwise harassed a woman via knowledge gained through his police duties, was not entitled to summary judgment on the woman's claim for outrage because he had abused the public trust. But subsequent authorities have confined *Woodley* to its facts. *See Tinker v. Beasley*, 429 F.3d 1324, 1330 (11th Cir. 2005) (distinguishing *Woodley* because the officer involved in that case was using information gained through position of public trust to act outside the bounds of that position). There is no evidence that Trooper Irvin abused the public trust or acted outside the bounds of his position. Even in the light most favorable to Phillips, the evidence is that Trooper Irvin simply became angry and overreacted to a stressful situation in the performance of his official duties by using more force on an arrestee than was reasonably necessary. Such conduct, while certainly not laudable or praiseworthy, falls wells short of extreme and outrageous conduct extending beyond all possible bounds of decency. Besides, plaintiff has not proffered a single authority in which the tort of outrage was held to apply to claims that a law enforcement officer used excessive force in an arrest.

claim predicated on an alleged First Amendment violation or retaliation theory.[56] Plaintiff has never sought leave of court to interject such a First Amendment retaliation claim into these proceedings. Notwithstanding the liberal pleading standard for civil complaints under Rule 8(a)(2), Fed.R.Civ.P., a brief opposing summary judgment is not a proper mechanism for *de facto* amendments to a complaint. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (having proceeded through discovery without seeking to amend complaint to reflect new theory of cause of action, plaintiff "was not entitled to raise it in the midst of summary judgment"). Had defendants objected to plaintiff's *de facto* amendment of the Complaint in his summary judgment opposition brief, this claim likely would have been rejected outright pursuant to the foregoing authorities.

But defendants did not object to this newly asserted cause of action on the grounds that it reflected an improper, untimely attempt to amend the Complaint. Instead, defendants responded to it exclusively on the merits. (Reply Brief, at 9.) The law of the Eleventh Circuit is clear that "issues not raised in the pleadings may be treated as if they were properly raised when they are tried by express or implied consent of the parties." *Steger v. General Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir. 2003); *see also Price v. M&H Valve Co.*, 2006 WL 897231, *11 n.7 (11th Cir. Apr. 7, 2006) (explaining that claim was properly dismissed where defendant objected to plaintiff raising claim for first time in brief opposing summary judgment). Defendants' failure to object to the procedural impropriety of the First Amendment claim, and their approach of instead attacking it on the merits, constitutes implied consent to having it be tried in these proceedings; therefore, the *Gilmour*/*Hurlbert* line of authority is inapplicable.

Defendants' response to this consented-to First Amendment claim under § 1983 is simply

---

[56] To be sure, in the fact section of the Complaint, Phillips alleged that Trooper Irvin "had no legitimate reason for refusing to provide identification and wrongfully and falsely arrested plaintiff for requesting identification thereby wrongfully and falsely depriving him of his Fourth Amendment and other constitutional rights to freedom of his person." (Complaint, ¶ 8.) But such an ambiguous reference to "other constitutional rights" does not preserve a First Amendment cause of action, and nowhere in plaintiff's meticulously detailed Complaint is any reference to First Amendment retaliation made.

to state that Phillips has not shown that his speech was a "substantial or motivating factor in the alleged retaliatory decision." (Reply Brief, at 8.) To be sure, this argument accurately reflects Eleventh Circuit precedent concerning what a plaintiff must show to prevail on a § 1983 claim alleging First Amendment retaliation. *See Gattis v. Brice*, 136 F.3d 724, 726 (11th Cir. 1998) (to survive summary judgment, plaintiff bringing § 1983 retaliation claim based on protected speech must "make a showing sufficient to permit a reasonable jury to find that his protected speech was a substantial or motivating factor" behind the challenged decision). Defendants contend in conclusory fashion that no evidence can "support a conclusion that Trooper Irvin arrested Mr. Phillips because of his speech." (Reply Brief, at 8.) The Court disagrees. The recording of the March 2003 incident reflects that Trooper Irvin placed Phillips under arrest approximately 30 seconds after Phillips inquired as to Trooper Irvin's name and badge number, and expressed an intent to report the matter. The extremely close temporal proximity between these events raises an inference from which a reasonable factfinder could conclude that Phillips' protected speech indicating that he planned to report Trooper Irvin was a substantial or motivating factor in Trooper Irvin's decision to arrest him. Of course, other constructions of the evidence are possible, including defendants' contention that Trooper Irvin "arrested Phillips solely because he refused to back off." (Reply Brief, at 8.) On summary judgment, this Court cannot pick and choose between conflicting reasonable inferences. Accordingly, the Court declines defendants' invitation to award it summary judgment on the newly added, consented-to First Amendment portion of plaintiff's § 1983 cause of action. Defendants' Motion for Summary Judgment is **denied** as to this claim.[57]

---

[57] Although defendants have not cited them, the Court is cognizant of the authorities providing that First Amendment claims such as Phillips' are not actionable if there was actual probable cause for his arrest. *See, e.g., Draper*, 369 F.3d at 1277 ("Draper also argues that Reynolds violated his First Amendment right to freedom of speech because Reynolds arrested him for proclaiming his innocence. Draper's claim is without merit because Reynolds had probable cause to arrest Draper regardless of Reynolds's motivation."); *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002) ("Whatever the officers' motivation, however, the existence of probable cause to arrest [the plaintiff] defeats her First Amendment claim."); *Redd v. City of Enterprise*, 140 F.3d 1378, 1383-84 (11th Cir. 1998) (holding that the existence of probable cause for an arrest is a complete defense to a First Amendment retaliation claim under the doctrine of qualified immunity). But defendants have never asked this Court to find actual probable cause

***G. Section 1983 Claim for Substantive Due Process Violation.***

In the Tenth Cause of Action, plaintiff alleges that Phillips' substantive due process rights were violated by his unlawful arrest and/or detainment. (Complaint, ¶ 45.) Plaintiff expounds on this theory of liability in his opposition brief by stating that Trooper Irvin's actions in wrongfully arresting Phillips and using excessive force against him violated substantive due process. (Opposition Brief, at 26.)[58]

This substantive due process theory is meritless on its face. By attempting to recharacterize his Fourth Amendment wrongful arrest and excessive force claims as causes of action for substantive due process, plaintiff ignores Supreme Court precedent that unambiguously precludes him from doing so. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth ... Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (explaining that if respondents' claim is covered by Fourth Amendment, then substantive due process analysis is inappropriate). Moreover, the Supreme Court has specifically held "that *all* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment ..., rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989) (explaining that Fourth Amendment, and not more generalized notions of substantive due process, must be guide for such claims because Fourth

---

for plaintiff's arrest. Instead, they sought qualified immunity on the § 1983 Fourth Amendment claim on the theory that there was arguable (not actual) probable cause for the arrest. The Court has not made a finding of actual probable cause in addressing the parties' other summary judgment arguments, and declines to do so *sua sponte* in connection with the First Amendment claim where defendants have proffered neither argument nor authority in that respect.

[58] In the "due process" section of his brief, Phillips also referenced Trooper Irvin's actions of partially obstructing the south entrance to the Truck Stop. However, Phillips specifically characterized this argument as sounding in procedural due process, not substantive due process. (Opposition Brief, at 26.) Because plaintiff has chosen to characterize his entrance-blocking claim as one of procedural due process, the Court will not weigh it for purposes of the substantive due process discussion.

Amendment provides explicit textual source of constitutional protection against physically intrusive governmental conduct). Lower courts in this Circuit have properly extended the *Graham* analysis to Fourth Amendment claims predicated on wrongful arrest, as the *Graham* Court's reasoning applies with equal force to Fourth Amendment wrongful arrest claims as to Fourth Amendment excessive force claims. *See Walker v. Briley*, 140 F. Supp.2d 1249, 1260 n.8 (N.D. Ala. 2001) (substantive due process claim arising from alleged arrest and ensuing detention without probable cause is not actionable, as a matter of law, because Fourth Amendment provides specific guarantee, precluding "backdoor" remedy of substantive due process as a source of additional protection from false arrest and false imprisonment); *Evans v. City of Neptune Beach*, 61 F. Supp.2d 1245, 1251 n.5 (M.D. Fla. 1998) (*Graham* reasoning that claims alleging excessive force in arrest must be analyzed under Fourth Amendment, rather than substantive due process, "is clearly also applicable to false arrest/imprisonment claims").

Given the impregnable wall of precedent forbidding plaintiffs from reclassifying excessive force and wrongful arrest claims as substantive due process claims in order to circumvent infirmities in pleading such causes of action under the Fourth Amendment, plaintiff's substantive due process claim veers perilously close to frivolity. Defendants' Motion for Summary Judgment is **granted** as to the substantive due process theory articulated in the Tenth Cause of Action.[59]

---

[59] The sole authority identified by plaintiff in support of its substantive due process claim is *Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003), a Fourth Amendment seizure case wherein the Eleventh Circuit considered whether the elements of a substantive due process claim were satisfied rather than holding that no substantive due process remedy existed. But *Vaughan* is not persuasive for the proposition that a substantive due process claim is cognizable here for two reasons. First, *Vaughan* found that the defendants were entitled to summary judgment on the plaintiff's substantive due process claim. That the *Vaughan* court did not do so by reference to the *Graham* rationale that substantive due process claims are not available for alleged acts of excessive force or wrongful arrest cannot reasonably be interpreted as a rejection of *Graham*. Second, the language of *Graham* and *Lewis* is quite clear that claims governed by the Fourth Amendment cannot be analyzed under a substantive due process standard. The *Vaughan* court expressed no disagreement or scruples with those rulings, and never even mentioned them. To the extent that *Vaughan* is in conflict with *Lewis* and *Graham*'s holdings that § 1983 claims arising from Fourth Amendment seizures cannot trigger substantive due process protection, the Supreme Court caselaw takes precedence.

## VI. Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. Plaintiff's Motion for Oral Argument (doc. 41) is **denied**.

2. Defendants' Motion to Strike Plaintiff's Exhibits (doc. 45) is **denied**.

3. Defendants' Motion for Summary Judgment (doc. 21) is **granted in part**, and **denied in part**. The Motion is **granted** with respect the following: (a) all claims against defendant Col. Coppage in his individual and official capacities; (b) all claims against defendant Trooper Irvin in his official capacity; (b) the First, Second and Third Causes of Action to the extent they rest on theories of unlawful or improper arrest or prosecution; (c) the Fourth Cause of Action; (d) the Fifth and Sixth Causes of Action; and (e) the Ninth, Tenth and Eleventh Causes of Action. All of those claims are **dismissed with prejudice**. The Motion for Summary Judgment is **denied** as to all remaining causes of action.

4. As a result of this ruling, the only surviving claims are the following individual-capacity claims against Trooper Irvin: (a) the portion of the First (negligence), Second (wantonness) and Third (willfulness) Causes of Action that relates to alleged use of excessive force by Trooper Irvin; (b) the Seventh Cause of Action (assault and battery); (c) the Eighth Cause of Action (§ 1983 claim for use of excessive force); and (d) the § 1983 First Amendment retaliation claim being tried by the consent of the parties.

5. In light of this ruling, the Clerk's Office is directed to terminate Col. Coppage as a party defendant in this action.

DONE and ORDERED this 14th day of June, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE