IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM JOSEPH PHILLIPS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 05-0131-WS-M |
| ) | |
| **OFFICER B.E. IRVIN,** ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter comes before the Court on the following Motions in Limine: plaintiff's Motion in Limine to Exclude from Evidence Portions of Testimony from Dickie P. Stevens Deposition (doc. 86), defendant's Motion in Limine to Exclude Plaintiff's Demonstrative Exhibit on Future Medical Expenses (doc. 87), defendant's Motion in Limine to Exclude the Affidavit of Champion Jackson (doc. 88), defendant's Motion in Limine as to Plaintiff's Claim for Damages for Lost Wages (doc. 89), plaintiff's Motion in Limine to Exclude from Evidence any Testimony regarding the March 2, 2004 Claim to the Alabama State Board of Adjustment (doc. 92), and plaintiff's Motion in Limine to Exclude from Evidence Parts of the Deposition Testimony of Dr. Hudgens (doc. 93). The court-ordered briefing schedule for all of these Motions having expired, they are ripe for disposition at this time.

**I.     Analysis of Plaintiff's Motions in Limine.**

As mentioned *supra*, plaintiff timely filed three Motions in Limine, including a Motion to exclude certain deposition testimony of Alabama State Trooper Dickie Stevens, a Motion to exclude testimony regarding a claim to the Alabama State Board of Adjustment, and a Motion to exclude certain portions of Dr. Hudgens' deposition testimony. (Docs. 86, 92, 93.) At the final pretrial conference and in an Order (doc. 81) entered following that conference, the undersigned informed the parties that responses to motions in limine must be filed on or before July 24, 2007. Defendant has failed to respond to any of plaintiff's Motions; therefore, it is assumed that

defendant has no objection to the relief requested.[1]

In the Motion in Limine (doc. 86) concerning the Stevens deposition, plaintiff objects to the admission of testimony by Trooper Dickie P. Stevens that he had heard that Phillips "was hard to deal with at times" based on a single discussion in which one patron of plaintiff's truck stop had remarked to Trooper Stevens that Phillips "seems to be an ... asshole" because of a discrepancy over whether the cost of the patron's meal included tea. (Stevens Dep., at 53-54.) Trooper Stevens testified that he did not recall ever hearing anyone else say anything negative about Phillips. (*Id.* at 54.) Plaintiff persuasively argues that such evidence constitutes inadmissible character evidence under Rule 404 and is also hearsay not falling within any recognized exception. In the absence of any justification or explanation by defendant for how this testimony of Trooper Stevens might satisfy Rule 404 or a hearsay exception, or be otherwise admissible, the Motion in Limine is **granted** and Trooper Stevens' testimony regarding what he had heard one person say about Phillips prior to the March 2003 altercation will be excluded.

Next, plaintiff submitted a Motion in Limine (doc. 92) seeking to exclude evidence about a claim made by Phillips to the Alabama State Board of Adjustment on March 2, 2004. Plaintiff characterizes the March 2 correspondence as "an effort to compromise" and an attempt "to illustrate the settlement demand that was made." (Doc. 92, at 2.) On that basis, plaintiff asserts that this correspondence should be excluded as settlement negotiations under Rule 408. The letter attached to the Motion in Limine as Exhibit 1 is a mere transmittal letter that does not reference any settlement demand, attempt to compromise, or the like, and does not reflect that it was intended to promote settlement negotiations. Nonetheless, as defendant has waived the opportunity to be heard in opposition to the Motion, and as nothing pertaining to the March 2, 2004 Board of Adjustment claim is set forth in defendant's exhibit list, the Motion in Limine is **granted** and evidence of the March 2, 2004 claim to the Alabama State Board of Adjustment will be excluded.

Plaintiff's third Motion in Limine seeks to exclude portions of the deposition testimony

---

[1] To the extent that plaintiff's Motions in Limine are unopposed, it would have been a far more efficient use of both judicial and litigant resources had the parties simply conferred prior to the drafting and filing of the Motions to ascertain whether there was any *bona fide* disagreement between them as to those evidentiary matters.

of Dr. Hudgens, plaintiff's treating orthopedist, in which defense counsel asked questions that plaintiff maintains mischaracterize his medical history. For example, defense counsel inquired, "Would it change your diagnosis or your opinion here today if you knew the full extent of his long and previous extensive history of back pain, neck pain, wrist injuries?" (Hudgens Dep., at 34.) Defense counsel also asked, "Did Mr. Phillips tell you that ... he had been involved in a previous altercation and when he went to the doctor that he described the identical symptoms and conditions to his wrist?" with a follow-up question "Would that change your opinion?" (*Id.* at 35.)[2] Later in the deposition, defense counsel asked whether it was true that "every single symptom and condition that Mr. Phillips presented with to you as to cause could have already been pre-existing at the time that he saw you?" (*Id.* at 40.)

Although hypothetical questions may appropriately be asked of experts, the law is clear that this type of question "should be in such a form as not to mislead or confuse the jury." *Iconco v. Jensen Const. Co.*, 622 F.2d 1291, 1301 (8th Cir. 1980); *see also Toucet v. Maritime Overseas Corp.*, 991 F.2d 5, 10 (1st Cir. 1993) ("a hypothetical should include only those facts supported by the evidence"); *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 537 n.8 (5th Cir. 1986) ("It is a well-established rule that hypothetical questions posed to experts without personal knowledge must assume a fair, undistorted collection of facts."); *Panter v. Marshall Field & Co.*, 646 F.2d 271, 296 n.8 (7th Cir. 1981) ("When a hypothetical question is not supported by independent evidence it is subject to objection."). Defendant has not shown any factual predicate for counsel's questions of Dr. Hudgens concerning a "long and previous extensive history of back pain, neck pain, wrist injuries," the "full extent" of which had purportedly been concealed from him. Nor has defendant offered any facts supporting counsel's questions

---

[2] When this sequence of questions was asked, plaintiff's counsel objected that such questions were lacking in any factual predicate. When defense counsel retorted that the predicate lay in the medical records that had been produced by plaintiff's counsel, plaintiff's counsel asked to be shown the particular record on which defense counsel was relying. Defense counsel refused. Such uncooperativeness serves no constructive purpose. It does not advance the interests of counsel or clients. Moreover, it ultimately squanders scarce judicial resources by culminating in a Motion in Limine that in all likelihood would have been obviated, one way or another, had defense counsel simply shown plaintiff's counsel the documents that served as the factual predicate for his questions or otherwise engaged in good-faith discussions to identify any factual basis for the questions that may have existed.

concerning a previous incident in which Phillips "described the identical symptoms and conditions to his wrist." Nor has defendant offered any evidence that might support an inference that "every single symptom and condition" of which Phillips complained was pre-existing. The Court's review of plaintiff's medical records filed under seal (doc. 97) has revealed no such evidence, and defendant has not come forward with any factual or legal basis under which those questions (and Dr. Hudgens' responses to same) may properly be presented to the jury.

For these reasons, plaintiff's Motion in Limine (doc. 93) relating to the Dr. Hudgens deposition is **granted**, and defendant will be precluded from introducing any portion of Dr. Hudgens' deposition testimony relating to the particular questions identified above, as found at pages 34-37 and 40 of his deposition.

## II.     Analysis of Defendant's Motions in Limine.

### A.     *Motion in Limine Regarding Plaintiff's Future Medical Expenses.*

Defendant first seeks an order barring plaintiff from utilizing his demonstrative exhibit concerning future medical expenses, on the grounds that such chart is not supported by plaintiff's evidence, lacks foundation, and is speculative.

The exhibit in question is Plaintiff's Exhibit 52, which is captioned "Conservative Future Medical Charges," and lists three line items totaling $45,420.26.[3] These line items recite that Phillips will have two office visits to his orthopedist each year at a charge of $66 per visit for all of the remaining 30.02 years of his estimated future life expectancy drawn from the Standard Mortality Table for a 48-year old male; that he will have three lumbar injections per year at a cost of $349 each for the next 30.02 years; and that he will have two wrist injections per year at a cost of $167 each for the next 30.02 years. Plaintiff's position is that "the calculations shown on Exhibit 52 can easily be completed by anyone who has the underlying documents and a calculator," with the "underlying documents" consisting of 4 pages from Dr. Hudgens' deposition, the mortality table, and copies of Dr. Hudgens' billing records for the procedures at issue. (Plaintiff's Response (doc. 98), at 3.) On that basis, plaintiff contends that this exhibit should be allowed under Rule 1006, Fed.R.Evid., which allows the contents of voluminous

---

[3]     Although defendant did not attach a copy of the exhibit to his Motion in Limine, a copy of Exhibit 52 is appended to plaintiff's Response (doc. 98).

writings to be presented in the form of a chart, summary or calculation.

Careful review of the underlying documents submitted by plaintiff largely confirms Exhibit 52's recitation of Phillips's life expectancy and the cost of each service (office visit, lumbar injection, and wrist injection).  Those documents do not, however, lend any support to Exhibit 52's estimate of the duration of those expected treatments.  For example, Exhibit 52 lists plaintiff as receiving two wrist injections per year for the next 30 years.  In his deposition, Dr. Hudgens did testify that wrist injections would be given at intervals of 8 of 12 months; however, his testimony explicitly contradicts Exhibit 52's projection that such injections will occur on an annual basis for as long as plaintiff lives.  When asked whether Phillips would require wrist injections for the rest of his life, Dr. Hudgens opined, "Typically it would taper off after a series of three or four injections.  Usually we wouldn't want to do repetitive injections if he wasn't getting any sustained relief."  (Hudgens Dep., at 39.)  Thus, far from confirming that Phillips is likely to need annual wrist injections for the next 30 years, Dr. Hudgens testified merely that Phillips may need as many as three or four injections per wrist, after which those injections "would taper off."  Plaintiff has thus offered no evidentiary basis for the assumption in Exhibit 52 that injections will likely be necessary in each of plaintiff's wrists on an annual basis for the remainder of his life.

The evidence is no more favorable to Phillips on the topic of lumbar injections.  Exhibit 52 calls for him to receive three lumbar injections per year for the rest of his life expectancy.  But Dr. Hudgens testified only that it was "[p]ossible" that Phillips might need lumbar injections in the future and that "there are not likely to be more than three in a calendar year."  (Hudgens Dep., at 39.)  To extrapolate from this limited evidence that a conservative estimate would be that Phillips will need three lumbar injections per year for the next 30 years is to take unwarranted liberties with Dr. Hudgens' testimony.  That it is "possible" that Phillips may need lumbar injections in the future does not establish that it is more likely than not that he will.  That there will likely not be more than three lumbar injections given to Phillips in a year does not support a reasonable inference that Phillips will need three such injections per year for as long as

he lives.[4]

Similar problems plague plaintiff's estimate in Exhibit 52 that he will need two office visits with his orthopedist every year for the rest of his life. Dr. Hudgens certainly did not testify to that; rather, plaintiff assumes that he will need two office visits per year for life to perform the wrist and lumbar injections identified in the other line items. As the need for such injections for the next 30 years is speculative, the concomitant need for office visits to perform such injections is equally speculative.

In short, then, while plaintiff has couched Exhibit 52 as a calculation of "Conservative Future Medical Charges," it is actually dependent on extreme assumptions and leaps of logic that are not supported by (and in some instances are directly contradicted by) reasonable inferences from the evidence of record. In the absence of competent evidence that Phillips is reasonably likely to require injections to his wrists and back with the stated frequency for the remainder of his life, Exhibit 52 is lacking in foundation and cannot reasonably be deemed a summary of other evidence for purposes of Rule 1006. As presented, then, defendant's Motion in Limine to Exclude Plaintiff's Demonstrative Exhibit on Future Medical Expenses (doc. 87) is due to be, and the same hereby is, **granted**.

### B.     *Motion in Limine Regarding Jackson Affidavit.*

Defendant has also filed a Motion in Limine to Exclude the Affidavit of Champion Jackson (doc. 88). Defendant's very short Motion states only that the affidavit should be excluded because it is hearsay and not admissible under Rule 802, Fed.R.Evid., and because it is not admissible under any exception to the hearsay rule.[5]

---

[4]     The medical billing records for Dr. Hudgens' office submitted by plaintiff in his Response (doc. 98) to the Motion in Limine are also to the contrary. Those records reflect that Phillips did not receive a single lumbar injection during the time period of April 3, 2006 through June 14, 2007.

[5]     Absent from defendant's Motion is any caselaw, analysis or reference of any kind to Rule 807, the residual hearsay exception invoked by plaintiff as a ground for seeking admissibility of the Jackson Affidavit. At the pretrial conference held on July 10, 2007, plaintiff's counsel expressly identified Rule 807 as the evidentiary basis for the Jackson Affidavit; therefore, it would have been helpful and appropriate for defendant's Motion to offer legal argument addressing the application of that evidentiary rule to this circumstance.

Champion Jackson was a witness to the fracas between Phillips and Trooper Irvin on March 4, 2003, that is the subject this lawsuit. More than two years later, plaintiff's counsel obtained an eight-paragraph document styled "Affidavit and Statement of Champion Jackson," which was submitted as part of plaintiff's summary judgment opposition in April 2006. (*See* doc. 36, at Exh. 6.) The Jackson Affidavit is dated June 29, 2005, purports to bear Jackson's signature, and is notarized by plaintiff's counsel of record. The Affidavit purports to contain Jackson's account of the incident, including the dialogue between the parties, Trooper Irvin's conduct in handcuffing Phillips and placing him in the patrol car, and Phillips' remarks about the tightness of the cuffs, as well as Jackson's observations of Phillips' appearance later that day after being released from jail. The Affidavit also states that the facts and statements therein are based on Jackson's personal knowledge, and the notary block contains the usual legend that it was "subscribed and sworn to" on the date in question. The Jackson Affidavit does not state that Jackson swore to its contents under penalty of perjury, nor is there any evidence of record as to the circumstances under which that affidavit was prepared or signed, much less that Jackson was ever apprised of the existence of this lawsuit or the likelihood that he could be cross-examined about his affidavit under oath. There is apparently no dispute that Jackson passed away in April 2007, rendering him unavailable to testify at trial. His deposition was never taken by either side in these proceedings. Plaintiff seeks to introduce the Jackson Affidavit nonetheless, pursuant to the residual hearsay rule found at Rule 807 of the Federal Rules of Evidence.

Rule 807 permits admission of a hearsay statement not otherwise admissible under Rules 803 or 804 where the statement satisfies all of the following requirements: (1) it has "equivalent circumstantial guarantees of trustworthiness" to the narrow exceptions codified in those rules, (2) it is "offered as evidence of a material fact," (3) it "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," and (4) "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Rule 807, Fed.R.Evid.

"[A] witness's death is not enough to justify discarding the trustworthiness requirement of the residual hearsay exception." *Stolarczyk ex rel. Estate of Stolarczyk v. Senator Int'l Freight Forwarding, LLC*, 376 F. Supp.2d 834, 842 (N.D. Ill. 2005) (excluding EEOC charge signed by decedent under oath as lacking a sufficient basis of trustworthiness for admissibility

under residual exception). Indeed, courts have emphasized that the residual exception must "be limited to circumstances evidencing a clear basis of trustworthiness, [else] exceptions to the rule against hearsay could swallow the rule." *Central Freight Lines v. N.L.R.B.*, 653 F.2d 1023, 1026 (5th Cir. Unit A 1981); *see also United States v. McCall*, 740 F.2d 1331, 1343 (4th Cir. 1984) ("the mere fact that a statement which is sought to be introduced is in the form of a written affidavit is not a sufficient guarantee of trustworthiness, and additional guarantees must be shown to permit the introduction of the statement"). In *N.L.R.B. v. United Sanitation Service, Div. of Sanitas Service Corp.*, 737 F.2d 936 (11th Cir. 1984), the Eleventh Circuit declared that admission of an affidavit by a declarant who had died was error because it was lacking in indicia of trustworthiness. In particular, the *United Sanitation* court pointed out that neither in the affidavit nor anywhere in the record was there any indication that the declarant knew of his potential liability for perjury, and that allegedly corroborative evidence did not go to the veracity of several key assertions in the affidavit. Because "the burden is on the party seeking to invoke the residual exception to clearly demonstrate the existence of the requisite guarantees of trustworthiness" and because it found no such clear basis of trustworthiness in the record, the Eleventh Circuit concluded that the affidavit should not have been admitted into evidence. *Id.* at 941; *see also Stokes v. City of Omaha*, 23 F.3d 1362, 1366-67 (8th Cir. 1994) (district court erred in admitting affidavit from deceased witness that lacked sufficient guarantees of trustworthiness, such that it did not fall within rare and exceptional circumstances justifying use of residual exception).

    Plaintiff has failed to demonstrate the existence of sufficient guarantees of trustworthiness with respect to the Jackson Affidavit to warrant its admissibility under Rule 807. Plaintiff submits no evidence of any kind concerning the circumstances under which Champion Jackson's Affidavit was prepared or signed. The Jackson Affidavit is separated in time from the date of the incident by more than two years. There is no indication in the Jackson Affidavit or in the record generally that Jackson was aware of his potential liability for perjury, the existence of this lawsuit, or the likelihood that his statements would be subjected to cross-examination. To be sure, the Affidavit reflects that it was "sworn to" before a notary public (who is also plaintiff's counsel), whatever that may mean. "An oath alone, however, is an inadequate safeguard to meet the requirement of [the residual exception] that the statement have 'equivalent

circumstantial guarantees of trustworthiness'." *United States v. Fernandez*, 892 F.2d 976, 981 (11th Cir. 1989). Plaintiff's argument that sufficient guarantees of trustworthiness are provided by corroborating evidence is similarly unavailing. "[T]o tip the balance in favor of admissibility, corroborating evidence must be extraordinarily strong." *Id.* at 983. Plaintiff has identified no "extraordinarily strong" corroborating evidence for the Jackson Affidavit, but has instead touted the uniqueness of that affidavit among all of the evidence in this case.

For these reasons, the Court is of the opinion that the Jackson Affidavit is not admissible under the Rule 807 residual exception because it lacks equivalent circumstantial guarantees of trustworthiness to the very narrow exceptions set forth in Rules 803 and Rule 804. Defendant's Motion in Limine to Exclude the Affidavit of Champion Jackson is **granted**.

### C. *Motion in Limine Regarding Lost Wages.*

Finally, defendant filed a Motion in Limine as to Plaintiff's Claim for Damages for Lost Wages (doc. 89). The Motion is directed at plaintiff's statement in the proposed Pretrial Order (doc. 80) that he seeks lost wages of $662,000, based on plaintiff having sold the truck stop business in 2006 because he could no longer do the work, thereby foregoing the $52,000 in annual earnings that he had been receiving from that business for the next 16 years, until he reaches age 65. (Plaintiff's lost wages figure includes an offset of $160,000 for the proceeds of the sale of the business.) Defendant's short Memorandum Brief (doc. 90) accompanying this Motion argues that the Complaint did not include a claim for lost wages, that plaintiff never sought to amend the Complaint to assert such a claim, that plaintiff never apprised defendant "that he was claiming damages for lost wages," and that defendant first learned of this claim after the close of discovery.

The premise of defendant's Motion is inaccurate. Review of the Complaint confirms that it contains repeated references to alleged lost wages in the *ad damnum* clauses accompanying various claims. Specifically, plaintiff's causes of action for negligence (Count One), wantonness (Count Two), and willfulness (Count Three) all include specific allegations that "he was caused to lose time from his employment and his ability to work and earn money in the future has been impaired and his business was damaged." (Complaint, ¶¶ 14, 17, 20.) All of those state-law causes of action remain pending in this action today. Similarly, the Fourth Amendment claim (Count Nine) which alleges that Trooper Irvin injured Phillips in the course of arresting him, also

includes in the itemized list of damages "[l]oss of sales" and "[l]oss of enjoyment, use and benefit of the business."  (Complaint, ¶ 43.)[6]  Thus, contrary to the theory animating the Motion in Limine, defendant has had actual notice since the inception of this action of plaintiff's intent to seek recovery for lost wages relating to his inability to operate his business.  To the extent that Trooper Irvin argues that Phillips failed to amend the Complaint to add a claim for lost wages or failed to inform defendant that he was seeking lost wages, such contentions ring hollow.  The Complaint clearly seeks recovery of lost wages; therefore, it was wholly unnecessary for plaintiff to amend it or to notify defendant separately that he was adding such a theory of damages.[7]

     Defendant's remaining objections are similarly unavailing.  In conclusory fashion, defendant asserts that plaintiff's lost wages evidence should be excluded on the ground of unfair prejudice because "defendant has had no opportunity to do any discovery relating to this claim for damages."  (Defendant's Brief, at 2.)  The Court disagrees.  Given the presence of the lost wages claim in the Complaint, defendant could have asked plaintiff about that theory of damages in his deposition, via interrogatories, or via requests for production of documents.  While such lines of inquiry would not have divulged the sale of the truck stop (which did not happen until after the close of discovery, while this case was on interlocutory appeal), they could have yielded invaluable insights into plaintiff's ability to do his job and any lost wages he was claiming to that point, all of which would have prepared defendant to address this issue at trial.  Defendant apparently failed to ask a single question of plaintiff during discovery about his lost wages claim.  Moreover, rather than seeking the draconian remedy of excluding this evidence altogether,

---

[6] Count Nine was dismissed on summary judgment based on the Court's reading of it as a constitutional claim predicated on unlawful arrest, rather than one alleging excessive force.  But the point remains that defendant was squarely on notice that lost wages and lost use of business were components of plaintiff's damages claims herein.

[7] The same conclusion is fatal to defendant's assertion that he "could not have discovered the fact that the plaintiff was claiming lost wages through discovery since the sale of the truck stop which led to this claim only occurred after all discovery was closed." (Defendant's Brief (doc. 90), at 2.)  Defendant could have discovered the fact that plaintiff was claiming lost wages from reviewing the Complaint and could have asked questions in discovery relating to plaintiff's ability to work at the truck stop and his intentions to keep or sell the truck stop.  That defendant elected not to do so is not a valid basis for excluding the evidence.

defendant could have requested limited supplemental discovery of Phillips relating specifically to the sale of his business. Given the narrowness of the issue and the fact that the sale occurred after discovery closed, this could have represented a viable way of vindicating defendant's interest in discovery in an efficient and inexpensive manner. That defendant chose not to go that route does not constitute unfair prejudice justifying the exclusion of plaintiff's evidence.

Lastly, defendant argues that "this claim for lost wages arose out of a sale that occurred over three years after the incident which is made the basis of this lawsuit and is too remote in time and is too speculative." (Defendant's Brief, at 2.) Without knowing what the testimony will be on the subject of why Phillips sold the truck stop, what connection that sale had to his alleged injuries caused by Trooper Irvin, and what steps Phillips has taken to mitigate damages, this argument cannot be evaluated. It is highly likely, however, that it will be for the jury to decide what, if any, causal nexus exists between Trooper Irvin's actions on March 4, 2003 and Phillips' sale of the truck stop three years later.

For all of the foregoing reasons, defendant's Motion in Limine to Exclude Evidence of Lost Wages (doc. 89) is **denied**.

### III.   Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. Plaintiff's Motion in Limine to Exclude from Evidence Portions of Testimony from Dickie P. Stevens Deposition (doc. 86) is **granted**.

2. Plaintiff's Motion in Limine to Exclude from Evidence any Testimony regarding the March 2, 2004 Claim to the Alabama State Board of Adjustment (doc. 92) is **granted**.

3. Plaintiff's Motion in Limine to Exclude from Evidence Parts of the Deposition Testimony of Dr. Hudgens (doc. 93) is **granted**.

4. Defendant's Motion in Limine to Exclude Plaintiff's Demonstrative Exhibit on Future Medical Expenses (doc. 87) is **granted**.

5. Defendant's Motion in Limine to Exclude the Affidavit of Champion Jackson (doc. 88) is **granted**.

6. Defendant's Motion in Limine as to Plaintiff's Claim for Damages for Lost

Wages (doc. 89) is **denied**.

DONE and ORDERED this 25th day of July, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
