IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM JOSEPH PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 05-0131-WS-M |
| | ) |
| OFFICER B.E. IRVIN, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on the parties' proposed jury charges.

On July 11, 2007, the undersigned entered an Order on Pretrial Conference (doc. 81), delineating various pretrial and trial deadlines. In relevant part, that Order required the parties to file "a jointly prepared jury charge covering the substantive issues in the case (*i.e.*, the law governing all claims, defenses and damages). ... The parties shall include in this submission a jointly prepared proposed verdict form, including any requested special interrogatories." (Order on Pretrial Conference, ¶ 5.) What the parties submitted bears little resemblance to these instructions. Rather than submitting a joint charge, each side submitted a separate proposed charge, totaling in the aggregate some 49 proposed charges, and a separate proposed verdict form. Thus, notwithstanding the numerous well-settled legal issues in this case (*e.g.*, excessive force, negligence, wantonness, compensatory damages, etc.), the parties are telling the Court that they cannot agree on a single substantive charge that this jury should be given. Such total disagreement is unprecedented and unacceptable, particularly given the paucity of novel legal questions presented and the plethora of decidedly well-settled, black-letter legal principles at work here.

Perhaps anticipating the Court's reaction, plaintiff's counsel have offered an explanatory cover letter. With regard to the federal claim, plaintiff's counsel explains that the parties agree that the pattern charge should be the starting point, but disagree as to whether and to what extent it should be modified. The problem is that both parties have submitted separate multi-page

charges that largely track the same language. (Defendant's Proposed Charge No. 14, Plaintiff's unnumbered charge labeled 2.2.) The Court is left to resort to word-by-word comparisons of a four-page document to attempt to divine the areas of disagreement. To avoid such inefficiency, the parties are **ordered** to resubmit their proposed excessive force charge as a single joint charge, using underscoring, italics or other devices to delineate the specific areas in which the parties differ. The Court will then resolve those particular areas of disagreement.

Plaintiff's counsel's letter also reflects a fundamental difference of opinion between the parties as to whether and to what extent immunity issues should be submitted to the jury, including both the defendant's qualified immunity defense on the federal cause of action and defendant's state-agent immunity defense on the state causes of action. Because the parties cannot see eye to eye on whether those defenses are even in the case, plaintiff's counsel explains, they cannot agree as to whether and to what extent the jury should be charged about them. The Court will address these areas of confusion to give the parties the necessary guidance to resubmit their proposed jury charge.

With respect to the federal claim, defendant would submit the issue of qualified immunity to a jury, and proposes an instruction (Defendant's Requested Charge No. 13) under which the jury would decide whether "a reasonable police officer ... would hold an objectively reasonable belief that his actions were constitutional" as a question of fact. In addition to being unrealistic and unworkable without providing the jury a lengthy tutorial on Fourth Amendment excessive force law, this charge is simply incorrect. Circuit precedent makes it absolutely clear that whether a reasonable officer would believe that his actions are constitutional is purely a question of law. *See, e.g., Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003) ("Whether a defendant is entitled to qualified immunity is a question of law, in other words, whether the law at the time of the incident was clearly established so that a reasonable person should have known that he was violating it."); *Koch v. Rugg*, 221 F.3d 1283, 1295-96 (11th Cir. 2000) ("whether a reasonable public official could have believed that the questioned conduct was lawful under clearly established law" is a question of law within core qualified immunity analysis). By contrast, only the "predicate factual element[s] of the underlying constitutional tort" are questions of fact for qualified immunity purposes because they "involve the determination of facts a party may, or may not, be able to prove at trial." *Koch*, 221 F.3d at 1296.

So, how, then, is a qualified immunity issue presented to a jury? The answer is, it isn't, at least not directly. As the Eleventh Circuit has explained, "the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense, but the jury does not apply the law relating to qualified immunity to those historical facts it finds; that is the court's duty." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002); *see also Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991) ("[O]nce the defense of qualified immunity has been denied pretrial due to disputed issues of material facts, the jury should determine the factual issues without any mention of qualified immunity."). *Johnson* teaches that the proper means of submitting qualified immunity issues to a jury is through special interrogatories that "should be restricted to the who-what-when-where-why type of historical fact issues" necessary to determine whether the predicate factual elements justify the legal application of the qualified immunity defense. 280 F.3d at 1318. This is the course that the Court urged the parties to follow when the issue arose at the Final Pretrial Conference; however, they have not done so. It is the responsibility of the parties to fashion special interrogatories that will elicit jury findings on any evidentiary disputes upon which the qualified immunity defense turns. The parties are therefore **ordered** to reexamine their proposed jury charges and verdict forms in light of the principles outlined in *Johnson*.

The parties also are seemingly at loggerheads concerning the status of the State-agent immunity defense applicable to the state-law causes of action. The Court understands that plaintiff believes that issue is purely one of law that has already been decided by this Court, while defendant would submit multiple jury charges to the jury bearing on that issue. As with the qualified immunity issue, neither side has afforded the undersigned any citations to relevant authority to support their position as to whether this issue is one for the Court or for the jury. Alabama Code § 6-5-338 provides that a duly appointed state, county or municipal peace officer "shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." *Id.* The Alabama Supreme Court refined its standard for entitlement to discretionary function immunity, or more precisely State-agent immunity, in *Ex parte Butts*, 775 So.2d 173 (Ala. 2000), by adopting the "restatement" of the law of State-agent immunity advanced by a plurality in *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000). Under the *Cranman* standard, a state agent is

immune from suit in his personal capacity for claims based upon "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." *Cranman*, 792 So.2d at 405.  Such immunity also covers acts of law enforcement officers in "serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a)." *Hollis v. City of Brighton*, 950 So.2d 300, 309 (Ala. 2006).  No immunity is available, however, "if an officer acts with willful or malicious intent or in bad faith." *Borders v. City of Huntsville*, 875 So.2d 1168, 1178 (Ala. 2003); *see also Cranman*, 792 So.2d at 405 (no State-agent immunity if agent "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law").  Stated succinctly, then, "[i]n order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity.  If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Ex parte Estate of Reynolds*, 946 So.2d 450, 452 (Ala. 2006).

In the Court's view, the question of whether Phillips' state-law claims arise from a function that would entitle Trooper Irvin to immunity is purely a question of law.  Under *Cranman* and *Hollis*, the exercise of judgment in enforcement of Alabama criminal laws, including arresting of persons, and the performance of service as a peace officer are undoubtedly functions that would entitle him to immunity under Alabama law.  *See Ex parte City of Tuskegee*, 932 So.2d 895, 906 (Ala. 2005) (defendants are entitled to immunity because engaging in an arrest or attempted arrest is a discretionary function requiring the exercise of judgment); *Swan v. City of Hueytown*, 920 So.2d 1075, 1079 (Ala. 2005) (similar); *Hollis*, 950 So.2d at 309 (State-agent immunity applies where officer was exercising judgment in discharge of his law-enforcement duties).[1]  Trooper Irvin's conduct in this case falls squarely within those

---

[1] To be sure, the Alabama Supreme Court observed in *Tuskegee* that a law enforcement officer is not entitled to absolute immunity for engaging in an arrest, and that no immunity attaches where either (1) the officer failed to discharge the arrest pursuant to detailed rules or regulations, such as those stated on a checklist; or (2) the officer carried out an arrest that is beyond his authority, such as by attempting a warrantless arrest outside the county of his

categories. As such, there is nothing for the jury to decide (and no reason to instruct the jury) on the question of whether Trooper Irvin was performing a function that would fall within the bounds of State-agent immunity. The only question for that immunity issue is whether Phillips has satisfied his burden of showing by a preponderance of the evidence that Trooper Irvin acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority, so as to strip him of that immunity. That question is clearly a mixed question of law and fact that is appropriately referred to the jury on special interrogatories, as this Court suggested to the parties at the Final Pretrial Conference.[2] Accordingly, the Court expects counsel to work together to fashion the following: (a) agreed charges on the definitions of willfulness, maliciousness, and the like; and (b) special interrogatories asking the jury to make determinations as to whether plaintiff has satisfied his burden on these issues. No further instructions or questions concerning State-agent immunity, the structure or operation of same are necessary.

Armed with the foregoing guidance, the parties are **ordered** to work together in good faith to prepare a joint jury charge and special interrogatories. The parties are reminded that they are responsible for submitting a joint charge that covers all substantive aspects of the case, including claims, defenses and damages. Given the well-settled nature of the legal issues in dispute here and the additional guidance provided above, the Court fully expects that the parties should be able to agree in good faith on the vast majority of the proposed charges and special interrogatories. To the extent that the parties cannot agree on a particular instruction or special interrogatory, they may offer separate proposed submissions as to that particular item.[3] To be

---

employment. *See Tuskegee*, 932 So.2d at 906 n.6. Here plaintiff has alleged no facts that would fit either of these scenarios.

[2] Contrary to plaintiff's apparent belief, the undersigned did not definitively resolve the State-agent immunity issue on summary judgment, but instead found that the evidence, viewed in the light most favorable to the non-movant, "plainly raises a jury question of malice sufficient to preclude a grant of summary judgment to Trooper Irvin on the state law force claims on a state-agent immunity theory." (Doc. 49, at 41.) As such, any suggestion that the State-agent immunity issue was disposed of on summary judgment is inaccurate.

[3] The parties should expect to be questioned at the charge conference about those areas of disagreement, and to be ready with good-faith explanations (and supporting authorities, where appropriate) of the reasons why they could not agree in each instance.

clear, then, what the parties must submit is the following: (a) a jointly prepared jury charge covering all substantive legal issues in the case; (b) a jointly prepared verdict form and/or special interrogatories; and (c) in addition to (and not in lieu of) the foregoing, any specific proposed charges or special interrogatories on which the parties have not been able to agree, clearly delineating the specific areas of disagreement. The revised submission must be sent by e-mail to efile_steele@alsd.uscourts.gov by no later than **5:00 p.m.** on **July 30, 2007**.

    DONE and ORDERED this 26th day of July, 2007.

                                                     s/ WILLIAM H. STEELE
                                                     UNITED STATES DISTRICT JUDGE