**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| WILLIAM JOSEPH PHILLIPS,     ) | |
|            ) | |
|      **Plaintiff,**     ) | |
|            ) | |
| **v.**     ) | **CIVIL ACTION 05-0131-WS-M** |
|            ) | |
| **OFFICER B.E. IRVIN,**     ) | |
|            ) | |
|      **Defendant.**     ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for New Trial (doc. 111), in which plaintiff identifies 10 assignments of error in connection with the jury trial held from July 31, 2007 through August 2, 2007.[1]

**I.      Background.**

     *A.      The Claims.*

Plaintiff, William Joseph Phillips, brought this action against defendant, Officer B.E. Irvin, following an incident on March 4, 2003 in which defendant (an Alabama State Trooper) arrested Phillips in the parking lot of the latter's place of business for interfering with a traffic stop that Trooper Irvin was performing at that location.  Phillips asserted federal claims against Trooper Irvin under 42 U.S.C. § 1983 for use of excessive force in connection with that arrest, in violation of plaintiff's Fourth Amendment rights.  Phillips also pursued a host of state-law theories, including negligence, wantonness, willfulness, and assault and battery.  These causes of action survived Trooper Irvin's motion for summary judgment and subsequent interlocutory appeal.

In the Joint Pretrial Document (doc. 80) filed on July 6, 2007, Phillips expressed his intention (as was his prerogative) to proceed to trial on all five theories, notwithstanding the

---

[1]      Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

significant overlap of his claims, the complications inherent in charging the jury on five distinct theories of wrongdoing arising from the same incident, the failure of the state-law claims to add anything to the case from a damages perspective, and the apparent negligible benefit to plaintiff in advancing so many theories (particularly given the threshold levels of proof necessary to overcome State-agent immunity as to the state-law causes of action).

### B.     The Evidence.

At trial, the jury heard two drastically different accounts of the events of March 4, 2003. Phillips presented testimony (from himself and one of his former employees) that Trooper Irvin was conducting a prolonged traffic stop in the parking lot of the truck stop owned by Phillips in a manner that obstructed the main entrance to the business. Plaintiff's evidence was that Phillips accosted Trooper Irvin and asked him to move his vehicle. When Trooper Irvin refused, saying he was nearly finished, Phillips continued to press the matter. Phillips testified that he asked Trooper Irvin for his name because he wished to report the incident, after which Trooper Irvin became enraged and placed Phillips under arrest for interfering with government operations. In the course of arresting Phillips, plaintiff's evidence showed, Trooper Irvin treated him roughly, striking his wrist with the swing arm of the open cuff, tightening the handcuffs on his wrists to the point of causing severe pain, jerking Phillips up by the chain on the cuffs as he dragged Phillips around the back of the patrol vehicle, and finally slamming his head into the roof of the car as he pushed him inside. For the next 20 to 25 minutes, plaintiff's evidence showed, Trooper Irvin ignored Phillips' repeated cries for help to relieve the pressure from the handcuffs. Plaintiff offered photographic evidence that his wrists were bruised and swollen from the cuffs, and presented medical evidence that he had sustained permanent nerve damage to his wrists, as well as a neck injury to his cervical spine.

Defendant's evidence of these events deviated markedly from plaintiff's. Trooper Irvin testified that Phillips raised his hand toward Trooper Irvin's chest in a manner that Trooper Irvin perceived as threatening, that Phillips ignored as many as eight repeated directives to "back off," that Phillips argued with Trooper Irvin while the latter's back was up against his patrol vehicle, that Phillips snatched his hands away when Trooper Irvin instructed him to place his hands on top of the vehicle, and that Phillips struggled against him and refused to comply with instructions when Trooper Irvin attempted to handcuff him in connection with the arrest. Trooper Irvin

-2-

testified that he checked the handcuffs by moving them up and down on Phillips' wrists to verify that they were not too tight. He denied having jerked the handcuff chain to pull Phillips up from his knees. He denied any intent to strike Phillips' head against the vehicle, although he acknowledged that Phillips might have hit his head as he was being lowered into the back seat. He testified that he did not hear any complaints from Phillips regarding discomfort caused by the cuffs because Trooper Irvin was outside the vehicle completing the traffic stop, interacting with bystanders, and conferring with additional troopers and the supervisor who arrived on the scene. Trooper Irvin further testified that there were no visible marks or bruises on Phillips' wrists when he removed the cuffs at the Creola jail.

Defendant's case also included three additional, potentially significant pieces of evidence. First, Trooper Irvin testified that even if handcuffs are not applied too tightly, a subject can injure himself by twisting his wrists around within those oval-shaped cuffs, causing the metallic parts of the cuffs to rub against the bone, tendons and nerves of the wrist. All the subject needs to do, according to Trooper Irvin, to relieve the pressure if that happens is to twist his wrists back around so that the narrowest part of the cuff is no longer rubbing against bone. Second, defendant offered the testimony of Sgt. Stanley Lemon, an Alabama State Trooper who was involved in moving Phillips' handcuffs from his back to his front. Sgt. Lemon observed nothing unusual with respect to Phillips' wrists during his dealings with him. Third, Michael Muncy (who was Trooper Irvin's supervisor at the time of the March 4, 2003 incident) testified that he arrived at the scene approximately 25 minutes after Phillips had been handcuffed. According to Muncy, he spoke with Phillips, whom he knew from prior dealings at the truck stop. At that time, Muncy testified, Phillips reported no injuries, and did not complain of any pain or discomfort. Instead, Muncy testified, Phillips simply apologized and indicated that the situation had gotten out of control. Muncy discerned no obvious signs of injury when he spoke with Phillips.

During Trooper Irvin's testimony in the defendant's case-in-chief, plaintiff's counsel asked on cross-examination whether he had a temper. Defendant answered negatively. Plaintiff's counsel sought to use that response as a springboard to introduce evidence of alleged prior bad acts by defendant. However, this very evidence had been the subject of a defense Motion in Limine (doc. 66), which the Court had granted by Order (doc. 107) dated July 27,

2007.  In briefing the Motion in Limine, the crux of plaintiff's argument was that evidence of prior bad acts was admissible under Rule 404(b), Fed.R.Evid., because it was relevant to show Trooper Irvin's intent.  Plaintiff maintained that this evidence that Trooper Irvin had lost his temper on previous occasions was relevant to show intent for his Fourth Amendment claim; however, plaintiff's brief on the Motion in Limine failed to include any argument that such evidence of intent was relevant to his state-law causes of action.  Because the law is quite clear that an officer's subjective intent (whether good or evil) is irrelevant to a Fourth Amendment excessive force claim, and because plaintiff tendered no argument that he sought to introduce that evidence to show intent as to his state-law causes of action, the July 27 Order concluded that the "prior bad acts" evidence was not relevant and not admissible under Rule 404(b).[2]  At a sidebar conference at trial after asking Trooper Irvin if he had a temper, however, plaintiff's counsel attempted to re-argue the Motion in Limine by contending for the first time that the "prior bad acts" evidence was admissible to show intent for purposes of the state-law causes of action.  Plaintiff's counsel offered no justification or excuse for not raising this argument in briefing the Motion in Limine, nor did they offer any valid basis for receiving a second bite at the apple concerning a pretrial evidentiary motion that had been fully briefed and decided before trial.  As plaintiff sought to introduce the "prior bad acts" evidence at trial pursuant to Rule 404(b), in derogation of the July 27 Order, and as plaintiff attempted to raise brand-new, previously available arguments to support the admission of such evidence, the Court sustained the defense objection and excluded the evidence.

####    C.    *The Jury Instructions.*

In anticipation of the challenges that might be created in charging the jury properly given Phillips' decision to proceed to trial with all of his overlapping causes of action, on July 11, 2007, the undersigned entered an Order on Pretrial Conference (doc. 81), requiring the parties to submit, one week before the July 31 trial date, "a jointly prepared jury charge covering the

---

[2]    The July 27 Order noted plaintiff's line of argument as follows: "Conspicuously absent from plaintiff's brief is any discussion of the state-law claims, the elements of same, or the relevance of intent or motive to such claims.  As plaintiff has eschewed any argument that evidence of intent or motive is relevant to the analysis of the state-law causes of action, the Court will not attempt to formulate such an argument for him."  (Doc. 107, at 5-6.)

substantive issues in the case (*i.e.*, the law governing all claims, defenses and damages). ... The parties shall include in this submission a jointly prepared proposed verdict form, including any requested special interrogatories."  (Doc. 81, ¶ 5.)  Instead of complying with this Order, on July 24, 2007, the parties proffered some 49 separate proposed jury instructions, not a single one of which was tendered as a joint, agreed instruction.  In a cover letter accompanying those proposed charges, plaintiff's counsel stated that the parties had "severe and intractable differences," mostly concerning the application of State-agent immunity to plaintiff's state-law causes of action.  Plaintiff's position was that State-agent immunity was a purely legal question that had already been decided by the Court, while defendant proposed a number of jury charges relating to that issue.[3]  Neither side submitted any authority to support its position.

On July 26, 2007, the undersigned entered an Order (doc. 106) informing the parties that their failure to agree on a single instruction was unacceptable and directing them to resubmit a joint proposed jury charge (supplemented by any separate proposed instructions as to which they could not reasonably agree in good faith) on or before July 30, 2007.  Significantly, that Order also furnished the parties with substantial guidance concerning how this Court intended to handle the State-agent immunity issue for purposes of jury instructions and verdict form.  In particular, the July 26 Order stated as follows:

> "[T]here is nothing for the jury to decide (and no reason to instruct the jury) on the question of whether Trooper Irvin was performing a function that would fall within the bounds of State-agent immunity.  The only question for that immunity issue is whether Phillips has satisfied his burden of showing by a preponderance of the evidence that Trooper Irvin acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority, so as to strip him of that immunity.  That question is clearly a mixed question of law and fact that is appropriately referred to the jury on special interrogatories, as this Court suggested to the parties at the Final Pretrial Conference.  Accordingly, the Court expects counsel to work together to fashion the following: (a) agreed charges on the definitions of willfulness, maliciousness, and the like; and (b) special interrogatories asking the jury to make determinations as to whether plaintiff has satisfied his burden on

---

[3]     Similarly, with regard to qualified immunity, defendant proposed instructions that would have the jury directly decide whether Trooper Irvin was entitled to qualified immunity on the § 1983 claim, while Phillips omitted any instructions or interrogatories relating to that topic on the ground that the Court had conclusively decided the qualified immunity issue on summary judgment.

these issues."

(Doc. 106, at 5 (footnote omitted).)[4]

Despite this clarification, the parties again stumbled.  Late in the day on July 27, 2007, the parties contacted the undersigned's chambers to advise of their continuing fundamental disagreement concerning how the jury should be charged concerning the state-law claims and the accompanying State-agent immunity defense.  Plaintiff's position was that the jury should be charged on all four state-law claims (negligence, wantonness, willfulness, assault and battery) and should not be given any instructions or asked any questions relating to State-agent immunity, which should be the exclusive province of the Court.  Plaintiff did not identify any authorities to support his position, and made no effort to reconcile his position on State-agent immunity with (or even to acknowledge) the clear guidance on this point set forth in the July 26 Order.  By contrast, defendant's position was that the jury should not be charged on the negligence, wantonness or assault and battery claims, but should only be charged as to willfulness because any lesser mental state would be insufficient to establish liability given the operation of State-agent immunity.  Defendant also identified no authorities to support his position.  A telephone conference conducted with counsel on the morning of July 30 also proved ineffective at resolving the parties' disagreement.

Notwithstanding the July 26 Order, what the parties submitted on July 30, 2007, literally the eve of trial, was 1 agreed instruction, 42 instructions proposed by plaintiff (as to which defendant apparently disagreed with all), and 11 instructions proposed by defendant (as to which plaintiff agreed with two).  Along with their proposed instructions, plaintiff's counsel submitted a cover letter reiterating their view that "the immunity issue is a legal issue to be determined by the Court - not the jury."  Once again, plaintiff's counsel did not cite a single authority in support of their position, nor did they in any way acknowledge the clear directives presented in the July

---

[4]     The July 26 Order also resolved the parties' disagreement concerning the qualified immunity issue by following *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002), which provides that qualified immunity is properly submitted to the jury via special interrogatories directed at the sort of who-what-when-where-why historical fact issues on which the qualified immunity defense might turn.  Although *Johnson* was confined to qualified immunity, the Court also adapted that decision to the State-agent immunity context in the absence of any Alabama authority providing otherwise.

26 Order concerning how the State-agent immunity issue would be handled for purposes of jury instructions and special interrogatories. On the subject of State-agent immunity, plaintiff's counsel also wrote in the July 30 cover letter, "Please note that the plaintiff does not request such fact interrogatories and does not think them necessary." For that reason, and despite the July 26 Order's unambiguous instruction that counsel submit such proposed special interrogatories as they deemed necessary to cover the underlying fact issues pertaining to the State-agent immunity exceptions, plaintiff submitted none. By contrast, defendant's July 30 submission specifically included a proposed special interrogatory dealing with State-agent immunity, as follows: "Do you find from a preponderance of the evidence ... [t]hat the Defendant acted with a willful or malicious intent?" This requested interrogatory was fully consistent with the July 26 Order.

The proposed jury charge prepared by the Court and distributed to counsel during trial on the morning of August 1, 2007 resolved the parties' disagreements concerning the state-law charges. As plaintiff requested, substantive charges for all four of the state-law causes of action were included. As defendant requested, however, and per the July 26 Order, the defendant's proposed instructions and special interrogatories directed at the malice and willfulness exceptions to the State-agent immunity doctrine were also included.

At the charge conference conducted at the close of all the evidence on the afternoon of August 1, 2007, plaintiff proposed, for the first time, a set of 25 special interrogatories (several of which included embedded newly requested supplemental jury instructions) relating to the State-agent immunity issue. Many of these special interrogatories were irrelevant or unhelpful on their face to the particular application of State-agent immunity in this case, or otherwise appeared not to have been tailored to a State-agent immunity determination here.[5] When the Court asked plaintiff's counsel specific questions concerning these proposed special interrogatories, counsel demurred, stating that he was not the person who had prepared them and that he would have to defer to an unspecified member of plaintiff's legal team who apparently was not present in the courtroom. It was also revealed at that time that plaintiff's counsel had

---

[5]    For example, proposed special interrogatory #5 would define the term "fraud" and ask the jury to make a determination as to whether Trooper Irvin had acted fraudulently in his dealings with Phillips, even though there was not one iota of evidence presented at trial to support a finding of fraud.

never shared these 25 proposed special interrogatories and embedded jury instructions with defense counsel, but was blindsiding both opposing counsel and the Court by proffering these at the close of all the evidence, during the final charge conference at trial, and long after the deadline of July 24, 2007 established by the Order on Pretrial Conference (and the secondary deadline of July 30, 2007 established by the July 26 Order) for submission of proposed jury charges and verdict forms.  Plaintiff's counsel made no showing to excuse the untimely submission of these 25 proposed special interrogatories, and the Court declined to consider them on that basis.[6]

At the charge conference, plaintiff's counsel also objected to the definition of malice set forth on page 15 of the Court's proposed jury instructions.  In particular, although acknowledging that this definition was "pretty complete," plaintiff's counsel asked that it be augmented with additional language from an Alabama case that they had not previously requested in their proposed jury charges.[7]  The Court denied that request as untimely.

At the charge conference, the Court also heard and denied multiple other objections from plaintiff's counsel, including the following: (a) an objection to the statement on page 10 of the proposed jury instructions that reasonableness must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight; (b) an objection that the Court's proposed jury instructions would omit any charges concerning recovery of future lost earnings; (c) an objection to the use of a phrase "during an arrest" in the verdict form as unduly limited in terms of time frame; and (d) a request that the verdict form be rearranged spatially to

---

[6]     At best, plaintiff's counsel seemed to suggest that the 25 special interrogatories were being offered in belated fashion during the August 1 charge conference because counsel was unaware that the Court intended to submit subsidiary questions pertaining to State-agent immunity to the jury.  However, the July 26 Order unequivocally delineated the Court's approach and specifically placed the parties on notice that they were to submit charges concerning willfulness, maliciousness and the like, as well as special interrogatories pertaining to those issues, for purposes of State-agent immunity.  Plaintiff's counsel could not credibly disclaim prior awareness that the jury would be instructed on and asked questions pertaining to State-agent immunity exceptions.

[7]     In particular, plaintiff's counsel requested that the malice definition also include a statement that malice may be inferred from mere wantonness or carelessness if the actor when doing the act knows it to be wrong or unlawful.

place the damages aspect of the federal claims in closer proximity to the liability findings concerning those claims.  Plaintiff's counsel candidly admitted at the charge conference that the circumstances of this case, the multiplicity of claims being tried, and the immunity issues still in play all conspired to render the verdict form "torturous" and "maddening."  Plaintiff's counsel also agreed that it was important not to submit a general verdict form to the jury because of the immunity issues and the possibility for appeal on certain particular claims and immunity issues. Conspicuously missing from the charge conference, however, was any concrete proposal by plaintiff's counsel for how to mitigate these problems.  Instead, the Court was left to its own devices to prepare a verdict form that minimized the confusion inherent in the case that plaintiff had elected to try.

Plaintiff's objections to those instructions and verdict form now form the backbone of his Motion for New Trial.  As such, the foregoing background facts will prove helpful in evaluating plaintiff's seven (7) assignments of error pertaining the jury instructions and special interrogatories.

### D.     The Verdict.

On August 2, 2007, the 8-member jury returned from their deliberations with a verdict in favor of the defendant.  Although the verdict form was lengthy, the jury's responses to the first three questions negated the need for them to address any of the others.  In particular, the jury answered "no" to each of Question 1 ("Do you find from a preponderance of the evidence that the Defendant intentionally committed acts that violated the Plaintiff's federal constitutional right not to be subjected to excessive or unreasonable force during an arrest?"), Question 2 ("Do you find from a preponderance of the evidence that the Defendant's acts were the proximate or legal cause of damages sustained by the Plaintiff?"), and Question 3 ("Do you find that the Plaintiff has proven to your reasonable satisfaction that the force used by the Defendant in arresting the Plaintiff was unreasonable or excessive?").  (Doc. 109, at Exhibit.)  Having done so, the jury properly left all the other questions blank.

Based on the jury's verdict, the undersigned entered a Final Judgment (doc. 110) on August 9, 2007 in favor of the defendant and against the plaintiff.  The Plaintiff has now filed a Motion for New Trial assigning no fewer than 10 purportedly prejudicial errors that he contends entitle him to a new trial.

## II.     Analysis.

### A.     Legal Standard for Motion for New Trial.

Plaintiff's Motion is brought pursuant to Rule 59(a)(1), Fed.R.Civ.P., which provides, in the context of jury trials, that "[a] new trial may be granted to all or any of the parties and on all or part of the issues ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  *Id.*  District courts are entrusted with broad discretion in determining whether a new trial is warranted in a particular case.  *See, e.g., Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 644 (11th Cir. 1990).[8] That said, the remedy of granting a motion for new trial "is sparingly used."  *Johnson v. Spencer Press of Maine, Inc.*, 364 F.3d 368, 375 (1st Cir. 2004) (citation omitted).

A trial court is duty-bound to defer to the jury's findings unless doing so would constitute a miscarriage of justice.  *See McBryde v. Carey Lumber Co.*, 819 F.2d 185, 189 (8th Cir. 1987); *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039, 1049 (W.D.N.Y. 1997) (motion for new trial should be granted only where jury result was seriously erroneous or a miscarriage of justice).  Thus, district courts generally may grant motions for new trial only where the verdict is so inconsistent with the weight of the evidence or the errors at trial are so prejudicial that to do otherwise would be a miscarriage of justice.[9]

---

[8]     *See also Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1098 (8th Cir. 2007) ("The district court has the sound discretion to grant a new trial, and we will not reverse its decision unless there is a clear showing of abuse of discretion.") (citation omitted); *Escue v. Northern OK College*, 450 F.3d 1146, 1156 (10th Cir. 2006) (appellate court reviews denial of plaintiff's motion for new trial for abuse of discretion); *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems*, 428 F.3d 706, 716 (7th Cir. 2005) ("Because the trial judge is uniquely situated to rule on such a motion, the district court has great discretion in determining whether to grant a new trial."); *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir. 2004) (district court's ruling on a request for new trial "rests with the sound discretion of the trial judge").

[9]     *See, e.g., Quintel Corp., N.V. v. Citibank, N.A.*, 606 F. Supp. 898, 906 (S.D.N.Y. 1985) (rejecting motion for new trial where weight of evidence supports jury's conclusions, even assuming challenged argument of counsel was improper); *Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 753 (2nd Cir. 2004) (explaining that judges have very limited role in controlling jury fact-finding and may act only when "they think it highly likely that the jury decided wrongly"); *El-Hakem v. BJY Inc.*, 262 F. Supp.2d 1139, 1148 (D. Or. 2003)

### B.  *Assignments of Error that Verdict was Against Weight of Evidence (Grounds #1 and 2).*

Plaintiff's first and second assignments of error in the Motion for New Trial are that the jury's verdicts on the federal claim and on the state-law claims are "against the great weight of the evidence and [are] due to be set aside."  (Doc. 111, at ¶¶ 1-2.)

Where a movant seeks to overturn a jury verdict as being contrary to the weight of the evidence, the standard for relief is onerous.  As one appellate court explained,  "even if we do not necessarily agree with the jury's verdict, it must be upheld unless it is clearly, decidedly or overwhelmingly against the weight of the evidence." *Escue v. Northern OK College*, 450 F.3d 1146, 1157 (10th Cir. 2006) (citation omitted).  A district court must "abstain from interfering with a jury verdict unless it is quite clear that the jury has reached a seriously erroneous result that would result in a miscarriage of justice." *Fioto v. Manhattan Woods Golf Enterprises, LLC*, 304 F. Supp.2d 541, 545 (S.D.N.Y. 2004).  To be sure, "[a] trial judge may grant a motion for new trial if the jury verdict is contrary to the great weight of the evidence"; however, he may not "simply substitute his judgment for that of the jury." *Pozzi Window Co. v. Auto-Owners Ins. Co.*, 429 F. Supp.2d 1311, 1323 (S.D. Fla. 2004).  Thus, "[w]hen a new trial is granted on the basis that the verdict is against the weight of the evidence our review is particularly stringent to protect the litigant's right to a jury trial." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984).  "The trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow," and is limited to "protect[ing] against manifest injustice in the jury's verdict." *Id.* at 1559.  New trials should be granted on evidentiary grounds only if, "at a minimum, the verdict is against the great - not merely the greater - weight of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (citation omitted).

Plaintiff cannot meet this daunting threshold.  As described *supra*, the jury heard two very different versions of the events of March 4, 2003.  A jury that believed defendant's evidence and found Phillips' testimony not credible could have readily determined that no excessive or unreasonable force was used.  In particular, the defendant's evidence supported

_____

(Seventh Amendment right to jury trial requires validation of verdicts if at all possible).

determinations that (a) Phillips moved toward Trooper Irvin in a threatening manner immediately before the arrest; (b) Phillips was initially non-compliant and resistant as he struggled against Trooper Irvin during the handcuffing process; (c) Trooper Irvin checked the handcuffs and found they were not too tight on Phillips' wrists; (d) Trooper Irvin never dragged Phillips around the car or jerked him up by the handcuff chain; (e) any contact of Phillips' head with the vehicle was incidental and did not produce injury; (f) Trooper Irvin could not hear Phillips' subsequent complaints about the tightness of the handcuffs because Phillips was inside the patrol car and Trooper Irvin was outside it interacting with other troopers, bystanders and a log truck driver alongside a busy, noisy state highway; (g) if Phillips was injured by the cuffs, it was only because he twisted his wrists within them in a manner that produced injury; (h) when Trooper Irvin's supervisor (a man known to Phillips) checked on him, Phillips did not complain of pain and did not evince any signs of injury, but instead apologized for the incident; and (i) another trooper on the scene saw no signs of injury to Phillips' wrists, and Trooper Irvin saw no signs of injury when he removed the cuffs at the police station. Defendants' evidence on these points, if believed, would have fully justified the jury answering Questions 1, 2 and 3 in the negative, based on determinations that Trooper Irvin did not use excessive or unreasonable force on Phillips and did not cause any damages sustained by Phillips.

In light of the foregoing, the Court readily concludes that the jury's verdict on the federal and state claims was not against the great weight of the evidence. To grant plaintiff a new trial on this theory would be to substitute the Court's judgment for that of the jury and to undermine the right to jury trial guaranteed by the Seventh Amendment. Plaintiff's Motion is therefore **denied** in this respect.

### C.   *Assignment of Error Concerning Prior Bad Acts (Ground #6).*

Plaintiff also seeks a new trial based on the exclusion of the "prior bad acts" evidence. Plaintiff's position is that "although such evidence might not have been admissible as to the federal claim, it was admissible as substantive evidence with respect to the state law claims, and it should have been admitted, to show the defendant's intent and/or state of mind when he used force." (Doc. 111, at ¶ 6.)

This ground does not warrant a new trial for two distinct reasons. First, as noted *supra*, the "prior bad acts" issue was fully briefed before trial in connection with a defense motion in

limine.  At that time, plaintiff never argued that the evidence should be admitted to show intent as to the state-law claims, but rather confined his argument to stating that this evidence was probative of intent as to the federal claim.  Plaintiff did not raise his current argument until a sidebar conference at trial, long after the motion in limine had been ruled on.  Such a *de facto* attempt to rebrief a motion in limine in the midst of trial to raise arguments that could and should have been raised previously is improper, and plaintiff offered no excuse or justification for his failure to present this argument in a timely manner.  Plaintiff will not be awarded a new trial merely because he was denied a second bite at the apple during trial on an evidentiary motion that was fully briefed and ruled upon in advance of trial.[10]

Second, and more fundamentally, the "prior bad acts" issue is not a viable basis for Phillips' Motion for New Trial because the jury never reached any questions concerning the state-law claims that might require findings concerning Trooper Irvin's intent.  As one of their three agreed-upon jury instructions, the parties agreed that, under Alabama law, a law enforcement officer who has the right to arrest and detain a person may use such force as is reasonably necessary to accomplish that purpose.[11]  Thus, the verdict form was structured (without objection by plaintiff) such that the jury had to answer whether Trooper Irvin had used unreasonable or excessive force as a threshold question.  If they answered that question

---

[10]    To the extent that plaintiff's counsel's statements at the sidebar conference are properly construed as an oral motion to reconsider, that motion was properly denied.  "In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly."  *Gougler v. Sirius Products, Inc.*, 370 F. Supp.2d 1185, 1189 (S.D. Ala. 2005); *see also United States v. Bailey*, 288 F. Supp.2d 1261, 1267 (M.D. Fla. 2003).  It is well established in this Circuit that "additional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration."  *Gougler*, 370 F. Supp.2d at 1189; *see also Rossi v. Troy State University*, 330 F. Supp.2d 1240, 1249 (M.D. Ala. 2002) (denying motion to reconsider where plaintiff failed to submit evidence in question prior to entry of order and failed to show good cause why he could not have done so).  As plaintiff sought reconsideration of the Motion in Limine based on facts and arguments available to him previously, but not raised, reconsideration was manifestly inappropriate.

[11]    *See, e.g., Evans v. Walker*, 187 So. 189, 190 (Ala. 1939) (explaining that if law enforcement officer has right to arrest and detain plaintiff, he cannot use more force than is reasonably necessary to accomplish that purpose).

negatively, the jury would never have to decide whether Trooper Irvin's state of mind was sufficient to satisfy the intent requirement for plaintiff's willfulness, wantonness, and assault and battery claims.  That is precisely what happened here.  Because the jury expressly determined that Trooper Irvin used no more force than reasonably necessary to arrest Phillips, he could not be held liable on those state-law causes of action as a matter of law, irrespective of what his intent or state of mind might have been.  Thus, any error in excluding the "prior bad acts" evidence to impute a nefarious intent to Trooper Irvin on March 4, 2003 was harmless because the jury never reached, and never had to reach, any questions calling for them to make determinations concerning Trooper Irvin's motive or intent.[12]

For these reasons, plaintiff is not entitled to a new trial on the basis that the "prior bad acts" evidence was excluded.

**D.     *Assignments of Error Relating to Jury Instructions / Verdict Form.***

Plaintiff's seven remaining assignments of error all relate to the jury instructions and verdict form.  The Court will explain the relevant legal standard for review of jury instructions, then proceed to examine plaintiff's grounds for relief one by one.

1.     *Legal Standard for New Trial Based on Erroneous Jury Instructions.*

"A district court has broad discretion in formulating jury instructions."  *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1313 (11th Cir. 2000) (citing *Christopher v. Cutter Laboratories*, 53 F.3d 1184, 1190 (11th Cir. 1995)).  Indeed, the law is clear that the trial judge "is not bound to parrot either counsel or appellate courts," that "his wide discretion permits him to select his own words and to charge in his own style," and that he is required only to "communicate[] the substance of the law correctly."  *Bass v. International Broth. of Boilermakers*, 630 F.2d 1058, 1061 (5th Cir. 1980); *see also Farley v. Nationwide Mut. Ins. Co.*,

---

[12]     To the extent that plaintiff would now argue that a jury finding that Trooper Irvin did not use excessive or unreasonable force should not have precluded the jury from determining separately whether Trooper Irvin possessed the requisite mental state to be held liable on the state-law causes of action, that argument is being raised now for the first time.  Plaintiff never objected to the proposed jury instructions or verdict form on that basis, and has not properly preserved that assignment of error under Rule 51, Fed.R.Civ.P.  Nor would any such objection prevail on plain error review absent a showing (which plaintiff has not made) that any error on this point was a misstatement of law that likely led to an incorrect verdict.

197 F.3d 1322, 1329 (11th Cir. 1999) ("we accord the trial judge wide discretion as to the style and wording employed in jury instructions and verdict forms") (citation omitted).  Not surprisingly, then, "[m]otions for new trial on the basis of erroneous and prejudicial jury instructions are committed to the discretion of the trial court and reviewed to ascertain whether there has been a clear abuse of that discretion." *Toole*, 235 F.3d at 1313 (citing *Christopher*, 53 F.3d at 1190)).  A new trial should be granted if the jury instructions "did not accurately reflect the law in such a way that we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1196 (11th Cir. 2004) (citation omitted) (affirming denial of motion for new trial where appeals court was not left with substantial and ineradicable doubt that the jury was misled by the instruction given).

"[T]he trial court's refusal to give a requested instruction is not error where the substance of that proposed instruction was covered by another instruction which was given." *Merchants Nat. Bank of Mobile v. United States*, 878 F.2d 1382, 1388 (11th Cir. 1989).  Even if a refused instruction (a) is not adequately covered by the existing charge, (b) is a correct statement of law, and (c) deals with an issue that is properly before the jury, "there still must be a showing of prejudicial harm as a result of the instruction not being given before the judgment will be disturbed." *Merchants*, 878 F.2d at 1389; *see also Bass*, 630 F.2d at 1062 ("Only if the trial judge's instructions to the jury, taken as a whole, give a misleading impression or inadequate understanding of the law and the issues to be resolved, is a new trial required."); *Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004) (to win a new trial based on erroneous jury instruction, movant "must show both that the instructions did not adequately state the law and that the error was prejudicial to them because the jury was likely to be confused or misled"); *Johnson v. Clark*, 484 F. Supp.2d 1242, 1252 (M.D. Fla. 2007) (new trial is warranted for erroneous jury instruction only if challenged instruction was incorrect statement of law and was probably responsible for an incorrect verdict leading to substantial injustice).  Where an error in the jury instructions did not influence the verdict, it is harmless and does not warrant a new trial. *See Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 758 (2nd Cir. 2004).

Where a plaintiff seeks a new trial based on alleged errors in jury instructions to which no contemporaneous objection was made, courts are disinclined to grant relief. *See, e.g., Chiron*

-15-

*Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004) (new trial based on erroneous jury instructions should be granted only where movant shows both fatal flaws in charge and a request for alternative instructions which could have corrected the flaws); *Sherman v. Kasotakis*, 314 F. Supp.2d 843, 859 (N.D. Iowa 2004) (to preserve argument, "objections to jury instructions must be made on the record, state the matter objected to, and give the specific grounds upon which the objection is based"); *Givens v. O'Quinn*, 447 F. Supp.2d 593, 601 (W.D. Va. 2006) ("[A] motion for new trial cannot be based on alleged errors in the instructions or verdict form when no corresponding objections were raised at trial."); *see also* Rule 51, Fed.R.Civ.P. (setting forth procedure and requirements for preservation of error concerning jury instructions). In the Eleventh Circuit, alleged errors in jury instructions that are not raised prior to jury deliberations are reviewed only for plain error. This is an "extremely stringent form of review" requiring the movant to establish that there was error, that the error was plain, that the error affected substantial rights, and that not correcting the error would seriously affect the fairness of the judicial proceeding. *See Wilbur v. Correctional Services Corp.*, 393 F.3d 1192, 1203 n.6 (11th Cir. 2004). "Plain error review is very stringent and reversal for incorrect jury instructions will occur only in exceptional cases when the error is so fundamental that it results in a miscarriage of justice. ... To meet this standard, the party must prove that the instruction was a misstatement of law that likely led to an incorrect verdict," and that the instruction "mislead[s] the jury or leave[s] the jury to speculate as to an essential point of law." *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1018 (11th Cir. 2004) (citation omitted); *see also Farley*, 197 F.3d at 1329 (for plain error in jury instructions or verdict form to occur, the error must be so prejudicial as to be probably responsible for an incorrect verdict).

>        2.      *Charge Concerning 20/20 Hindsight (Ground #4).*

In instructing the jury concerning whether a specific use of force is excessive or unreasonable on a Fourth Amendment analysis, the Court gave defendant's requested jury charge number 3, which stated as follows:

>     "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The nature of reasonableness must make allowances for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force necessary

in a particular situation."

(Court's Instructions to the Jury, at 10-11.)  At the charge conference, plaintiff's counsel objected that this language is probative of qualified immunity, not of any issue before the jury. The Court overruled the objection, which plaintiff reiterates in his Motion for New Trial.

The challenged instruction has nothing to do with qualified immunity.  To the contrary, a crucial issue joined at trial for the jury to decide was whether Trooper Irvin's use of force was excessive or unreasonable.  In *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865 (1989), the Supreme Court used language very closely tracking that included in the Court's jury instructions to guide the inquiry as to whether a particular use of force was reasonable or not. Contrary to plaintiff's counsel's bald assertion, *Graham* was not talking about qualified immunity, but was instead setting forth general principles to be used in assessing whether a particular use of force was reasonable or unreasonable.  Those principles from *Graham* were potentially helpful to the finder of fact in applying Fourth Amendment excessive force law to the specific facts and circumstances of this case; therefore, the Court included defendant's requested language in its jury instructions.  As such, the challenged instruction was not erroneous and cannot properly support the granting of the Motion for New Trial.

In the Motion, plaintiff also unveils a brand-new objection to this particular instruction, which he never presented to this Court at the charge conference or at any other time before now. Specifically, plaintiff contends that "this part of the charge was not relevant, was abstract, and was confusing" because "[t]his case did not involve any split-second judgment in the use of force."  (Doc. 111, ¶ 4.)  This objection was not properly preserved under Rule 51(c), and does not rise to the level of plain error.  Besides, contrary to plaintiff's assertion, there was substantial evidence that this case did, in fact, turn on split-second judgments by Trooper Irvin concerning the use of force.  When Phillips stood before him, arguing with him in a loud and angry voice and raising his arm in a threatening manner, Trooper Irvin absolutely had to make a split-second determination as to how much (if any) force was necessary in arresting Phillips.  When Phillips resisted the handcuffs, snatching his hands away and struggling against Trooper Irvin's attempts to cuff him, Trooper Irvin had to make a split-second determination as to how much (if any) force was necessary to subdue him.  Plaintiff's contention that this case "did not involve any split-second judgment in the use of force" is simply counterfactual.  This assignment of error is

-17-

overruled.

>        *3.        Charge Defining Malice (Ground #5).*

Next, plaintiff contends that he is entitled to a new trial because the Court utilized an incomplete definition of the term "malice" for purposes of instructing the jury concerning the "willful or malicious intent" exception to State-agent immunity.  The Court's jury instructions stated, in pertinent part, as follows: "[Y]ou will also be asked a question concerning whether the Plaintiff has proven to your reasonable satisfaction that the Defendant acted with a willful or malicious intent.  For purposes of answering that question, you are instructed that 'malice' is the intentional doing of a wrongful act without just cause or excuse with an intent to do injury to another.  The existence of malice can be implied from the circumstances."  (Court's Instructions to the Jury, at 15.)[13]  At the charge conference, plaintiff's counsel objected that this definition did not include a statement that malice may be inferred from wantonness or carelessness if the actor when doing the act knew it to be wrong or unlawful.  This requested statement did not appear anywhere in plaintiff's proposed jury instructions submitted on July 30, 2007, but was instead presented for the first time at the charge conference itself.  Plaintiff offered no explanation or excuse for his failure to include that requested language in his proposed jury instructions; therefore, the Court overruled that objection on the basis that the requested supplemental language was not timely submitted.

In his Motion for New Trial, plaintiff states that this charge contains "an incomplete definition of the term 'malice' for purposes of this case" (doc. 111, ¶ 5); however, neither plaintiff's Motion nor his accompanying brief identifies how he believes the instruction to be incomplete.  Presumably, plaintiff would re-assert his contention that the jury should have been instructed that malice can be inferred from wantonness or carelessness.  Given that plaintiff did not submit such a request with his proposed jury instructions (which included a charge on malice, incidentally, as to which plaintiff would not have defined the term at all, but would have left it to the jury to decide what malice meant), his new request at the charge conference to supplement the malice definition was properly denied as untimely and does not warrant granting

---

[13]        This definition of malice was drawn from defendant's requested jury charge #6, and supplemented by the first sentence of plaintiff's requested jury charge #23.

the Motion for New Trial.

More fundamentally, this assignment of error is perplexing because the jury never reached the question of whether Trooper Irvin acted with willful or malicious intent, which was Question 8 on the Verdict Form and Special Interrogatories. As the jury expressly determined in answering Question 3 of the Verdict Form that Trooper Irvin did not use unreasonable or excessive force, it is of no moment whether Trooper Irvin acted maliciously or not because even the malicious use of reasonable, non-excessive force by Trooper Irvin could not support liability on any of plaintiff's claims. The jury made no findings on malice, and any error that may have existed in the jury charge definition of malice is unquestionably harmless. Of course, an error in jury instructions that could not have influenced the jury's verdict is not a viable basis for ordering a new trial. In essence, plaintiff's contention is that he should receive a new trial because, had the jury reached the question of malice, it might have been led astray by an incomplete definition of the term. This speculative, theoretical assignment of error is meritless.

4.      *Charges and Verdict Form Concerning State-Agent Immunity Exceptions (Grounds #5, 7).*

In two different assignments of error, plaintiff criticizes the Court's handling of the State-agent immunity issue in the jury instructions and verdict form. As the Court understands it, plaintiff's objections are as follows: (a) it was error for the Court to submit questions concerning State-agent immunity to the jury at all because those determinations are the exclusive province of Court; (b) it was error for the Court not to charge the jury concerning exceptions to State-agent immunity other than willful or malicious intent; (c) it was error for the Court not to administer the 25 special interrogatories that plaintiff's counsel unveiled at the charge conference; and (d) it was error for the verdict form to convey the impression that the jury could not find for the plaintiff on his state-law causes of action unless the jury found that Trooper Irvin acted with malicious or willful intent.

Once again, all of these objections are superfluous and amount to, at most, harmless error. The jury's finding that Trooper Irvin did not use excessive or unreasonable force renders it immaterial whether the jury was properly charged on matters pertaining to State-agent immunity. Without a threshold finding of excessive or unreasonable force, Trooper Irvin could not be liable to Phillips on any of the state-law causes of action, as a matter of law, irrespective

of how the State-agent immunity issues may have otherwise played out.  In seeking a new trial based on such assignments of error that cannot possibly rise above the level of harmless error because they relate to issues that the jury never reached, plaintiff's Motion veers perilously close to frivolity.

In the interests of ensuring a complete record for purposes of appellate review, however, the Court will explain its reasons for handling the State-agent immunity issue the way it did.  As to plaintiff's first objection, the Court's understanding of Alabama law is that, given the Court's finding that Trooper Irvin was engaged in a discretionary function, he was entitled to State-agent immunity as a matter of law unless plaintiff proved that he fell within one of the recognized exceptions (willfulness, malice, bad faith, fraud, or acting beyond his authority).  (*See* July 26 Order (doc. 106), at 3-5.)  In this Court's view, it would be improper for a trial court to make findings on the mixed questions of fact and law as to whether those exceptions apply, essentially taking those issues away from the jury and curtailing the parties' constitutional right to a jury trial by transforming the trial court into finder of fact on immunity-related issues.  For example, courts do not generally make factual findings as to whether a defendant's conduct was malicious or not, particularly where (as here) there were conflicting inferences in the record as to whether Trooper Irvin acted willfully or maliciously.  Therefore, the Court's solution was to charge the jury on malice and ask it to make a finding as to whether Trooper Irvin acted maliciously, just as the Court would do on any other affirmative defense where the record contained conflicting factual inferences.  Plaintiff has never come forward with a single Alabama authority tending to undercut the propriety of this approach, but instead has repeatedly insisted that the Court should decide these issues on plaintiff's mere say-so.

As for plaintiff's second objection, the July 26 Order directed the parties in the clearest of terms to prepare and submit jury instructions and special interrogatories pertaining to the State-agent immunity exceptions on or before July 30, 2007.  Defendant did so, submitting proposed instructions and interrogatories concerning the "willful or malicious intent" exception.  Plaintiff did not, but instead disregarded the July 26 Order by submitting a cover letter to the Court on July 30 again insisting (with no citation to authority whatsoever) that the Court should decide whether a State-agent immunity exception applied.  The reason the Court included only jury instructions and interrogatories pertaining to the "willful or malicious intent" exception is

because that is the only exception that either party invoked in their voluminous proposed charges that they submitted the night before the trial began.

As for plaintiff's third objection, it was clearly improper for plaintiff to present 25 proposed special interrogatories (and embedded supplemental jury instructions) to the Court and opposing counsel for the first time at the charge conference conducted at the close of all the evidence.  Not only did plaintiff's counsel not show cause for failing to submit those special interrogatories prior to the July 30 deadline, but when the Court asked questions about those interrogatories, counsel's response was essentially to disclaim knowledge about them because he was not the person who had drafted them.  Under the circumstances, the Court was fully justified in declining to consider those 25 special interrogatories.  For the Court to have proceeded otherwise at that juncture would have been needlessly to delay completion of the trial (inasmuch as defense counsel would have had to be given time to review those special interrogatories and formulate objections to same, the jury instructions and verdict form would have had to be substantially reworked and restructured to accommodate these voluminous new items, etc.), to prejudice the defense by ambushing them with special interrogatories submitted at the very end of trial, and to reward plaintiff's counsel for disregarding the July 26 Order.

With respect to plaintiff's fourth objection, for the reasons stated above and in the July 26 Order it was precisely the Court's intent to convey in the verdict form that the jury could not find for Phillips on the state-law causes of action unless the jury found that Trooper Irvin had acted with willful or malicious intent.  This was a correct statement of law, given the doctrine of State-agent immunity and plaintiff's failure timely to request any instructions or special interrogatories pertaining to any of the other exceptions to that doctrine.

    5.    *Failure to Give Plaintiff's Requested Charge #3 (Ground #8).*

In yet another assignment of error pertaining to the jury instructions, plaintiff states that the Court erred in failing to give plaintiff's requested instruction #3, which reads as follows: "When considering the totality of the circumstances, when deciding whether the force used was excessive or unreasonable, you may also consider the availability of any alternative methods of handcuffing or otherwise subduing and detaining the citizen [*sic*] were reasonably available to the officer."

This assignment of error is misguided for several reasons.  First, plaintiff failed to

preserve this alleged error pursuant to Rule 51 by raising it during the charge conference. There is no reason to believe that plaintiff can satisfy the stringent "plain error" standard of proving that the charge as given was misleading and likely led to an incorrect verdict. Second, and more importantly, plaintiff overlooks the fact that plaintiff's requested instruction #3 was substantially incorporated into the final jury instructions. In particular, page 10 of the Court's instructions given to the jury in this case includes the following language: "Whether a specific use of force is excessive or unreasonable turns on factors such as ... whether alternative means of subduing and detaining the suspect are reasonably available to the officer." (Court's Instructions to the Jury, at 10.) Because the Court in fact modified the pattern charge to substantially include plaintiff's requested instruction #3, plaintiff's attempt to parlay a new trial from the Court's alleged failure to give that instruction is devoid of merit.

      6.  *Failure to Give Plaintiff's Requested Charges #4-9 (Ground #9).*

    Plaintiff also assigns error to the Court's failure to give plaintiff's requested jury charges #4 through #9. Those charges largely consisted of selective extrapolations of facts drawn from Eleventh Circuit precedents, with conclusory statements that those constellations of facts must amount to excessive force as a matter of law.

    As an initial matter, plaintiff has not preserved this objection pursuant to Rule 51, inasmuch as he failed to object to the exclusion of his proposed charges 4 through 9 at the charge conference conducted on August 1, 2007, and is instead raising his objection for the first time in his Motion for New Trial. Plaintiff has made no attempt to support this assignment of error under a plain error analysis, and the Court finds that plaintiff cannot show that the omission of these instructions misled the jury or left the jury to speculate as to an essential point of law, as would be necessary for plaintiff to show plain error.

    That said, there are good reasons why the Court did not give plaintiff's requested instructions #4 through #9. They are highly repetitive hypotheticals that, in large part, say the same thing six different ways. Further, in the Court's view, all of those requests are adequately covered by the detailed instructions on excessive force set forth on pages 9 through 11 of the Court's Instructions to the Jury. Moreover, the Court was concerned that inclusion of those requested instructions would have been confusing or misleading. The jury was instructed that a Fourth Amendment excessive force inquiry turns on the attendant circumstances, such as the

severity of the crime, whether the suspect poses an immediate violent threat to others, whether the suspect had already been secured or subdued, whether the suspect had complained of pain, whether alternative means of subduing and detaining the suspect were reasonably available, whether the suspect was resisting or fleeing, and whether the officer reasonably believed that the suspect will resist arrest.  However, plaintiff's proposed charges would reiterate and restate certain of these factors, emphasizing the particular ones of interest to the plaintiff and excluding the others, thereby conveying an incorrect impression to the jury that certain factors were more important, as a matter of law, than the others.

Moreover, plaintiff's approach would apparently reduce the Fourth Amendment excessive force inquiry to a mechanical checklist, and would reduce the Eleventh Circuit's Fourth Amendment excessive force jurisprudence to an examination of a few particular factors and circumstances to the exclusion of all others.  For example, plaintiff's proposed jury instruction #5 reads as follows: "The use of any force causing injury is unreasonable and excessive after the citizen/arrestee has been handcuffed, has been secured and is not resisting, is not attempting to escape, and poses no threat to the officer or the public."[14]  The only authority plaintiff cites for this proposition is *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002).  But *Vinyard* does not actually include such a statement; rather, plaintiff is attempting to boil down a 17-page appellate opinion with a 4-page recitation of relevant facts into a single sentence, even though the *Vinyard* court emphasized that its ruling was predicated on "[t]he peculiar facts of this case."  *Id.* at 1355.  For plaintiff selectively to seize on certain facts from that opinion to support a general conclusion that conduct is excessive force anytime a particular grouping of factors is found is to transform the law in this area from a totality-of-the-circumstances inquiry into a pithy checklist.  This is improper.  *See Graham*, 490 U.S. at 396 (observing that the "test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," but that "its proper application requires careful attention to the facts and circumstances of each particular case").

---

[14]     This instruction is clearly covered by the Court's jury instructions, which directed the jury to consider such factors as whether Phillips had already been secured or subdued, whether Phillips was resisting or fleeing, and whether Phillips posed an immediate threat to others.

-23-

The risk of confusion is amplified by plaintiff's requested approach of using hypotheticals framed in terms of "If you find A, B, C, D, and E, you must find that the defendant used excessive force." But what if the jury found A, B, and D, but not C and E? What if the jury found C, F, and G? The point is this: Plaintiff's proposed charges #4 through #9, in addition to being substantially redundant of material already adequately covered in the Court's instructions on excessive force (which were modeled on the Eleventh Circuit Pattern Jury Instructions, Federal Claims Instruction 2.2), impute a false degree of precision to the excessive force analysis that would attempt to encapsulate it into a stylized, mechanical checklist which could confuse and distract the jury from the all-encompassing analysis that Pattern Charge 2.2 (as modified by the Court and parties) instructed the jury to undertake.[15]

For all of these reasons, the Court finds that plaintiff is not entitled to a new trial on the grounds that his requested instructions #4 through #9 were not given.

7.    *Verdict Form Limitation to Time of Arrest (Ground #3).*

Plaintiff's next assignment of error quibbles with the word choice in Questions 1 and 3 of the verdict form. In particular, Question 1 asked the jury to find whether defendant engaged in acts that violated plaintiff's right "not to be subjected to excessive or unreasonable force during an arrest,"[16] and Question 3 included verbiage asking the jury to find whether "the force used by the Defendant in arresting the Plaintiff was unreasonable or excessive." According to plaintiff's Motion for New Trial, this wording "impermissibly narrowed the elements of plaintiff's causes of action to the conduct of the defendant up to the moment of the arrest" and could have led the jury to conclude wrongly that conduct after the instant at which the plaintiff was handcuffed was

---

[15]    Ironically, most of the authorities on which plaintiff relied for his proposed instructions #4 through #9 were cases in which courts were performing qualified immunity analyses, and plaintiff has attempted to convert portions of that qualified immunity analysis into jury instructions. Thus, plaintiff did exactly that which he inaccurately accused the Court of doing in his fourth assignment of error by seeking to instruct the jury on principles derived from qualified immunity analysis.

[16]    The language used by the Court in Question 1 tracks exactly the language used in the Special Interrogatories to the Jury appended to section 2.2 of the federal claims instructions set forth in the Eleventh Circuit Pattern Jury Instructions.

irrelevant.  (Doc. 111, at ¶ 3.)[17]

The Court does not perceive any reasonable risk of confusion to the wording on the form. Defendant's arrest was not a moment in time at which handcuffs were placed on him, but an ongoing period from the time he was told he was under arrest until the time he was taken to the Creola Police Station an hour or so later.  The parties' evidence and argument at trial were directed to that entire period of time, and nothing the Court or counsel said could be reasonably interpreted as telling the jury that they could not consider anything that happened after the handcuffs reached Phillips' wrists in deciding whether excessive force had been used.  The Court's Instructions to the Jury on excessive force were directly to the contrary because they instructed the jury to consider such factors as "whether the suspect had already been secured or subdued" and "whether the suspect has complained of pain to the officer."  This language suffices to eradicate any doubts the jury might have harbored as to whether they were allowed to consider events happening after Trooper Irvin stated that Phillips was under arrest.

Besides, even if plaintiff were correct that Questions 1 and 3 were subject to confused interpretations by the jury as to the temporal period involved, the jury verdict for the defendant

---

[17]       In raising this objection at the charge conference, plaintiff's counsel did not propose any specific text that might clarify the verdict form, other than to suggest that it make reference to the arrest and thereafter.  In the Court's view, plaintiff's proposed fix is substantially more nebulous and prone to confusion than the language actually used in the verdict form. Additionally, altering the language in the verdict form in this fashion would cause a disconnect between the parties' agreed jury instruction on excessive force (which was couched in terms of excessive force during an arrest) and the verdict form.  It would also run the risk of transforming plaintiff's Fourth Amendment excessive-force-during-arrest claim into a Fourth Amendment excessive-force-during-detention claim, the viability of which is highly questionable.  *See generally Graham*, 490 U.S. at 395 n.10 ("Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today."); *Jordan v. Cobb County, Georgia*, 227 F. Supp.2d 1322, 1336 (N.D. Ga. 2001) ("neither the Supreme Court not the Eleventh Circuit has ever held that the Fourth Amendment applies to excessive force inflicted on a pretrial detainee").  As one district court observed, "the Supreme Court has never held that the Fourth Amendment creates a cause of action for claims of excessive force administered after arrest."  *Jordan*, 227 F. Supp.2d at 1337.  The Court had no intention of injecting such a legal quagmire into this case at plaintiff's invitation, which would have been the effect of granting plaintiff's request to include "post-arrest" language in the verdict form for the Fourth Amendment claim.

would remain in place because in Question 2, the jury expressly found that Trooper Irvin's acts (not confined to any temporal interval) were not the proximate or legal cause of Phillips' damages.  That jury determination is fatal to all of plaintiff's claims, independently of the jury's findings that no excessive force was used, and renders any error in the wording of Questions 1 and 3 harmless.

For all of these reasons, no new trial is warranted on plaintiff's assignment of error that Questions 1 and 3 of the verdict form were confusingly worded.

8.     *Verdict Form and Special Interrogatories as Confusing (Ground #10).*

Lastly, plaintiff assigns error on the ground that "[t]he verdict form and special interrogatories used was [*sic*] confusing and caused the jury not to consider elements of the claims made and had the over-all effect of negating the court's instructions to the jury on the federal and state claims."  (Doc. 111, ¶ 10.)  Plaintiff offers no elaboration as to how the verdict form was confusing, leaving the Court to guess as to the nature of this objection.

The Court rejects this ground for a new trial for three reasons.  First, although a revised proposed verdict form and special interrogatories were distributed to counsel on the morning of August 2, 2007, plaintiff's counsel never objected that the form prepared by the Court was confusing.  As such, this assignment of error is subject to plain error review.  Plaintiff has not shown and cannot show that the verdict form was so badly flawed that it likely led to an incorrect verdict, as is necessary to be entitled to a new trial on a plain error analysis.  Second, any error in the verdict form is harmless because Questions 1, 2 and 3 are dispositive of the case.  As to those questions, the jury gave very clear answers to very clear questions.  Whatever confusion might have been embedded deeper in the verdict form was harmless because the jury never reached those issues.  And third, it must be pointed out that any confusion in the verdict form was a direct product of plaintiff's decision to try this case in such a manner that there were five overlapping and redundant causes of action, subject to two different kinds of immunity, with various defense objections and affirmative defenses specific to particular claims.  During the charge conference on August 1, plaintiff's counsel agreed that the verdict form would of necessity be "torturous" and "maddening" because of the interplay among these myriad conflicting matters; however, plaintiff offered no constructive solution to the problem, and no constructive objections to the solution proposed by the Court on the morning of August 2 after

several hours of effort the night before.  Plaintiff cannot receive a new trial by choosing to litigate his case in such a manner that a complicated verdict form would necessarily result, acknowledging at the charge conference that such was the case, failing to propose any solution to the problem, failing to offer any constructive critique of the solution proposed by the Court before the jury began deliberating, and now lodging a generic, conclusory objection that the verdict form was confusing.

**III.    Conclusion.**

      "This case was tried, won and lost on the merits."  *Hessen*, 915 F.2d at 651.  Plaintiff may not like the result, but he has made no showing of error sufficient to warrant the relief he now seeks.  Accordingly, for all of the foregoing reasons, the Motion for New Trial (doc. 111) is **denied**.

      DONE and ORDERED this 30th day of August, 2007.

                              s/ WILLIAM H. STEELE
                              UNITED STATES DISTRICT JUDGE